12905

FIDELITY FIRE INSURANCE CO. v. HARBY *ET AL.*

(153 S. E., 141)

*Messrs A. S. Merrimon* and *M. W. Seabrook,* for appellant,

*Mr. Shepard K. Nash,* for respondent,

April 23, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This action, tried in the Court of Common Pleas for Sumter County, was brought to recover the amount due on a bond and to foreclose a real estate mortgage executed as security therefor. Material facts giving rise to the questions presented are, briefly, as follows:

The defendant Horace Harby, owner of a tract of land in Sumter County, containing 51.3 acres, on the 5th day of November, 1919, executed to A. D. Harby, Isaac Schwartz, C. D. Schwartz, and A. K. Ingram, individually, and as executrix of the will of W. H. Ingram, deceased, a mortgage on said tract of land to secure his bond of even date in the sum of $20,008, conditioned for the payment of $10,004, payable in three successive equal annual installments, the first of which was to become due and payable January 1, 1921, with interest from January 1, 1920, at the rate of 7 per cent. per annum, with the usual provision as to attorney's fees. The mortgage was duly recorded in the office of the clerk of Court for Sumter County. Thereafter, the papers were duly assigned to the plaintiff for value. On August 8, 1923, the defendant Horace Harby executed a deed purporting to convey the mortgage tract of land to the defendant, the Sumter Cemetery Association, a corporation duly incorporated under the laws of this state, at and for the price of $13,338, the deed being executed pursuant to a contract of sale and purchase alleged to have been entered into between the parties on July 27, 1923, according to the terms of which the cemetery association was to assume the payment of the Harby mortgage, and to pay, in cash, the difference between the purchase price of said land and the amount due on the mortgage. It appears that the cash payment made by the cemetery association to Harby was $3,122.16. There is no question as to the liability of Harby to the plaintiff for the full amount due on the bond. The issues relate to the liability of the cemetery association.

The case was referred to the master to take and report the evidence. On that evidence, it was heard before Hon. M. M. Mann, presiding Judge. On August 6, 1927, Judge Mann passed a decree, giving plaintiff judgment against both defendants in the sum of $12,389.34, with interest from April 14, 1927, at the rate of 7 per cent. per annum. The decree provided that, as between the defendants, the Sumter Cemetery Association was primarily liable for the payment of the judgment, and in the event the defendant Horace Harby should be forced to pay the same, or any part thereof, he should stand subrogated to the rights of the plaintiff in respect thereto.

From the judgment, the Sumter Cemetery Association has appealed to this Court on thirteen exceptions. We notice, without stating the exceptions, the grounds of appeal raised thereby, that we deem it necessary for us to pass upon.

The plaintiff was the owner and holder of the bond and mortgage at the time of the execution of the deed by Horace Harby to the Sumter Cemetery Association; the deed was, of course, subject to the then outstanding mortgage of plaintiff. There can be no question, therefore, but that plaintiff is entitled to the foreclosure of its mortgage, and the sale of the mortgaged premises and the applicaton of the proceeds arising from said sale to the mortgage indebtedness.

The principal question presented by the exceptions is this. Did the trial Judge commit error in giving judgment against the Sumter Cemetery Association? To answer this question it is necessary to inquire whether or not the cemetery association purchased the land in question, and, as a part of the consideration therefor, assumed the payment of the outstanding mortgage of Harby to plaintiff? If it did, then the judgment of the Circuit Court must be affirmed; if not, it must be reversed.

The Sumter Cemetery Association, along with other named associations, societies, and churches, was incorpor-

ated in 1857 by an Act of the General Assembly (12 St. at Large, 647). Section 2 of that Act is as follows:

"That the said Churches, Societies and Associations, shall have succession of Trustees, Vestry and Wardens, Officers and Members, according to their respective by-laws, and shall have power respectively to make by-laws not repugnant to the laws of the land, and to have, use and keep a common seal, and the same alter at will; to sue and be sued in any court in this State, and to have and enjoy every right, power and privilege, incident to such corporation; and they are hereby empowered to hold, retain, possess and enjoy all such property, real and personal, as they may now severally have and possess, or be entitled to, or which shall hereafter be given, bequeathed or devised to them respectively, or in any manner acquired by them, and to sell, alien, or transfer the same, or any part thereof; *Provided,* That the amount so held shall in no case exceed the sum of fifty thousand dollars."

That the Sumter Cemetery Association had the right to acquire real estate by purchase is clear. The right to contract is a necessary incident to the corporation. Otherwise, in the absence of a gift or devise, the association would be unable to acquire the lands necessary for the burial of the dead. The pertinent inquiry here is not whether the corporation had authority to purchase real estate for cemetery purposes and to mortgage the same to secure the purchase price, or to assume the payment of an outstanding mortgage, but, did the corporation make the alleged purchase, and did it assume the payment of the outstanding Harby mortgage which plaintiff then held?

According to its by-laws, the officers of the Sumter Cemetery Association consist of a president, six trustees, secretary and treasurer and superintendent; and the offices of secretary, treasurer, and superintendent may be filled by one and the same person, or by different persons, and four trustees are necessary to constitute a

quorum for the transaction of business. The duties of the president and secretary and treasurer are clearly defined by Sections 9 and 10 of the by-laws. *They have no authority as such, to transact the business of the corporation; that power is vested in the board of trustees.*

The contract of purchase alleged to have been entered into on July 27, 1923, was signed by the president, and secretary and treasurer only. The contract does not refer to any authority conferred upon them by the board of trustees. It is contended by the defendant Harby that the board of trustees had authorized the purchase, but no resolution was passed by said board expressly authorizing the purchase or ratifying the alleged purchase. Reliance is had, however, on the action of the board of trustees on July 25, 1923, to which we will recur directly.

There was a regular meeting of the board on March 28, 1923, at which the president stated that the object of the meeting was to consider plans for acquiring additional property for use of the association. After some discussion, trustee McCallum was requested to obtain from the defendant Horace Harby an option on the land in question, and to report back to a meeting to be called by the president. On July 24, 1923, at a called meeting for the purpose of receiving the report of trustee McCallum, he reported that $15,000 was the best price he could get for the Harby land. As a quorum was not present, the matter was informally considered. Mr. McCallum was requested to see Mr. Harby again and get lowest price and an option for a few days, and report to another meeting to be called shortly. On the following day a called meeting was held, and the minutes of that meeting, relied upon as authorizing the purchase, are as follows:

"At a called meeting of trustees held this date there were present President Walsh and Trustees Scarborough, Seale, Wallace, Epps and McCallum. Trustee McCallum reported that he had secured a ten-day option on 51 3-10 tract of Horace Harby for $260 per acre or $13,338. About 38 acres

of this was reported as upland. Secretary Moffett of Board was present by request and matter of trade with Fair Association of portion of this tract if purchased was tentatively discussed—matter of purchase of tract at this figure was also discussed. On motion of Trustee Scarborough the President was authorized to appoint a committee of two to act with himself to further consider the matter as to desirability, ways and means for financing, interest rate to be obtained on necessary loan and with powers to act.

"The sentiment of the meeting was favorable to the purchase at this or lower price. The President appointed Trustees Epps and McCallum to act with him on this committee."

At that time the trustees were: R. D. Epps, D. R. McCallum, H. L. Scarborough, B. C. Wallace, W. J. Seale, and S. A. Harvin. S. A. Harvin was not present and knew nothing of the matter until some time after the alleged consummation of the transaction. The undisputed evidence is that B. C. Wallace, while present at the beginning of the meeting, left before the vote on the Scarborough resolution was taken, thus leaving four trustees present at the time the vote was had. These four would have constituted a quorum in the absence of any disqualification of any one of them.

The undisputed testimony is that trustee McCallum was engaged in the real estate business and was very insistent on the purchase of the Harby land. Harby's own testimony as to the relation between him and McCallum is as follows:

"Q. Mr. Harby, Mr. David McCallum undertook to negotiate this trade with you as real estate dealer? A. He did negotiate the trade with me.

"Q. And afterwards claimed a commission for selling the property for you? A. He did, sir. I would like to state, furthermore, since you have gone into that matter, that Mr. David McCallum came to me—

"Mr. Harby (attorney for witness), I don't think I would go into details.

"The Witness: Well, I will say that Mr. McCallum came there and got me to list the property with him, and consum-

mated the trade between the Sumter Cemetery Association and me, and claimed a commission for the trade. I afterwards learned from Mr. McCallum himself that he came representing the Sumter Cemetery Association, appointed by them for the purpose of negotiating the trade, and I didn't think he acted in good faith with me, and I told him about it.

"Q. When he came to you he represented to you that he was acting for you? A. Yes, sir; but on the contrary, he was acting for the Sumter Cemetery Association, and I told him so, and he acknowledged it."

In *McCallum v. Grier*, 86 S. C., 162, 68 S. E., 466, 468, 138 Am. St. Rep., 1037, this Court said:

"The next question is whether the relations existing between the defendant, the plaintiff, McCallum Realty & Insurance Company, and D. R. McCallum, Jr., were such as to prevent the latter from entering into a contract with J. L. McCallum for the sale of the land that would be binding upon the defendant against her wishes. The McCallum Realty & Insurance Company was the agent of Mrs. Grier, and of course J. L. McCallum, its president, and D. R. McCallum, Jr., its manager, also sustained towards her a fiduciary relation, yet we find that one fiduciary (J. L. McCallum) not only seeks to purchase property from the other fiduciary (D. R. McCallum), but that the plaintiff constituted D. R. McCallum, Jr., his agent to negotiate the purchase of the property from the defendant, although her interests were antagonistic to those of the plaintiff."

And the Court, quoting with approval 4 Enc. of Law, 966, 19 Cyc., 207, went on to say:

"A broker cannot act as the agent of both parties, where their interests are conflicting. Thus, a broker employed to sell cannot act at the same time as the agent of the purchaser, for in that case the duty he owes to one principal to sell for the best price obtainable is essentially inconsistent with, and repugnant to, the duty he owes to the other to buy at the

lowest price possible and there would, necessarily, be danger that the right of one principal would be sacrificed to promote the interests of the other."

"The general rule of agency which prohibits an agent from representing both himself and his principal in a transaction in which their interests are adverse and antagonistic applies where a corporate officer attempts to represent both himself as an individual and the corporation in a transaction in which his and the corporate interests are adverse and antagonistic. Actual injury is not the principle upon which the law proceeds in condemning such contracts. Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. * * * A director cannot, according to the better view, form part of a quorum to act on a proposition in which his individual interest is adverse to the corporation though he does not vote upon the matter." 7 R. C. L., 479.

"Where a sufficient number of directors are present to constitute a quorum the action of the majority of those present is generally binding upon the corporation, provided such majority is made up of directors who are not disqualified to act by reason of their individual interest in the matter." 7 R. C. L., 445.

That the interests of McCallum and the Sumter Cemetery Association were adverse and antagonistic is manifest, and he was clearly disqualified to act as trustee of the cemetery association. Since four trustees were necessary, under the by-laws, to constitute a quorum for the transaction of business, and since there were only four present when the vote on the Scarborough resolution was taken it follows that a quorum was not present if McCallum was disqualified.

"A quorum is not present in passing upon a matter in which one of the directors is personally interested, where only a bare quorum is present when he is counted. And like-

wise an interested director or committeeman cannot be counted in order to make up a quorum to pass upon any matter in which such director or committeeman is interested." *Peurifoy v. Loyal,* 154 S. C., 267, 151 S. E. 579, 586, and authorities there cited.

Having reached the conclusion that a quorum was not present at the meeting of the board of trustees on July 25, 1923, when the vote on the Scarborough motion was taken, it follows that no authority was conferred thereby upon the president and the two members of the committee appointed to act with him, and any and every act by them, or any of them, performed pursuant to such supposed authority was void and a nullity.

Something is said in the argument of the respondent ■ as to ratification by the cemetery association of the purchase of the Harby lands, and the assumption of the mortgage thereon by the cemetery association. Even if that question was properly before us, there would be some doubt as to the evidence being sufficient to sustain ratification. We do not consider that question as being involved in the cause. We find nothing in the pleadings about it. The Circuit Judge did not pass upon this phase of the case, and it is evident that he was not asked to do so. We take it that the attorneys for the respondent, and especially the attorney for Mr. Harby, in the lower Court, did not regard ratification of the contract as having any bearing on the issues in the case. When one of the attorneys for the cemetery association was seeking to show by a witness that there had been no ratification of the contract by the trustees of the association, counsel for Mr. Harby, in objecting to the question, made this statement: "We object on the ground that it is immaterial. The transaction was complete in itself, and required no ratification."

It is our opinion that the Circuit Judge erred in giving judgment against the Sumter Cemetery Association, and in not holding that the alleged contract of purchase and sale between the cemetery association and Harby, of July 27,

1923, and the deed, containing the assumption of the mortgage debt on the part of the association, were all void. It follows that the treasurer of the association had no authority to pay over to the defendant Harby any portion of the funds in his hands on such purchase, nor did he have authority to pay any funds in his hands to the plaintiff. The defendant, Harby, therefore, should be required to return all funds so paid to him by the treasurer of the cemetery association, together with interest thereon, and, in a like manner, the plaintiff should be required to return to the cemetery association all funds paid over to it by the treasurer of the association. In the accounting, however, proper credit should be allowed Harby for rents received by the treasurer of the cemetery association.

The judgment of this Court is that the decree of the Circuit Court be, and the same is hereby, modified as herein indicated, and that the cause be remanded to that Court for such further orders as may be necessary to carry out the views we have expressed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.