THE CITY OF NEW YORK, Respondent, *v.* BENJAMIN BLUM, Appellant.

Riparian rights — pollution of stream by upper riparian owner to injury of lower riparian owner — injunction abating such nuisance — upper riparian owner cannot complain of provision which gives him the choice of abating a nuisance or of allowing a lower riparian owner to abate it for him.

1. Each riparian owner is entitled to a reasonable use of the water flowing by his premises and each is entitled to have the stream preserved in its natural size, flow and purity. Each individual must, however, submit to some restrictions upon his natural rights for the privilege of living in organized society. The maxim *sic utere tuo ut alienum non lædas* applies and is flexible enough to be applied to changing conditions and circumstances. As each must make a reasonable use of his own, so the restraints which others impose upon that use must be reasonable, and what is reasonable depends on such a variety of circumstances that no hard and fast rule can be laid down. The question is always one of degree.

2. A lower riparian owner has the right to have water which has been detained or diverted returned in its natural state, save for such slight diminution or pollution as may necessarily occur from a reasonable use. It is not reasonable to divert the water from its natural channel and to return it, laden with the excreta of domestic

animals, when the upper riparian owner can with slight trouble prevent such pollution.

3. While one riparian owner cannot appropriate the premises of an upper riparian owner without making compensation therefor, the former can insist upon the latter using his premises so as not unreasonably to impair the rights of the former as a lower riparian owner, and the latter cannot complain of a provision in a judgment inserted for his own benefit, nor is he aggrieved by a judgment which gives him the choice of abating the nuisance himself or of allowing the lower riparian owner to abate it for him. (*George* v. *Village of Chester*, 202 N. Y. 398, distinguished.)

*City of New York* v. *Blum*, 151 App. Div. 923, affirmed.

(Argued March 21, 1913; decided April 22, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 11, 1912, modifying, and affirming as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellant. The use by the appellant of the ponds upon his premises, for the raising of ducks in the manner in which they are ordinarily raised, was not a nuisance, and the decree which enjoined such use was unwarranted. (*Sweet* v. *City of Syracuse*, 129 N. Y. 316; 2 Black. Comm. 18; *Helfrich* v. *C. W. Co.*, 74 Md. 269; *People* v. *Hulbert*, 131 Mich. 156; *Merrifield* v. *Worcester*, 110 Mass. 219; *George* v. *Vil. of Chester*, 59 Misc. Rep. 553; *Forbell* v. *City of New York*, 164 N. Y. 522; *Matter of Cheesebrough*, 78 N. Y. 232; *Spring Valley Water Works* v. *Fifield*, 136 Cal. 14; *Fisher* v. *Bountiful City*, 21 Utah, 29; *Townsend* v. *Bell*, 62 Hun, 306; 42 App. Div. 409; *Forster* v. *Scott*, 136 N. Y. 584; *Colon* v. *Lisk*, 153 N. Y. 188; *Wright* v. *Hart*, 182 N. Y. 330; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271.)

*Archibald R. Watson*, Corporation Counsel (*James D. Bell* and *John B. Shanahan* of counsel), for respond-

ent. The use of Pine's stream made by the defendant was not a reasonable use. That use polluted the water of Pine's stream. As a lower riparian owner the plaintiff was entitled to have the water of Pine's stream transmitted to it without sensible alteration in quality. Plaintiff, therefore, was entitled to an injunction. (*Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303; *Townsend* v. *Bell*, 42 App. Div. 410; *Wood* v. *Wand*, 3 Exch. 748; *Embrey* v. *Owen*, 6 Exch. 353; *City of Durango* v. *Chapman*, 27 Col. 169; *Bowman* v. *Humphreys*, 132 Iowa, 234; *Baltimore* v. *Warren Mfg. Co.*, 59 Md. 109; *Prevett* v. *Prison Assn.*, 98 Va. 332; *McNamara* v. *Taft*, 83 N. E. Rep. 310; *Sprague* v. *Dorr*, 185 Mass. 10.)

Miller, J. This is an injunction action. The defendant owns about ten acres of land at the village of Rockville Center, Nassau county, on the east bank of Pine's stream, a small stream which flows into Smith's pond about a quarter of a mile south of the defendant's premises. Smith's pond was acquired by the city of Brooklyn for water supply purposes in 1853 and is now used by the plaintiff for the purpose of supplying the inhabitants of Brooklyn with pure and wholesome water. There are three small, shallow ponds on said premises fed by an artificial channel from Pine's stream, and at the time of the commencement of this action their outlet was another artificial channel leading back into Pine's stream. The defendant keeps 200 ducks. The pond, which is mostly used by the ducks, is about fifty feet in diameter and has sloping banks. Its waters, befouled by the ducks, escape into and pollute the waters of Pine's stream. The judgment of the Special Term enjoined the defendant from maintaining upon his premises ducks or other water fowl, the faeces or excreta from which would pollute Pine's stream, unless he should allow the plaintiff to enter upon said premises and at his expense to clean the ponds and place sand and gravel on the slopes of the

ponds and put a gravel filter at the outlet of the duck pond, the work to be done not more than once a month and so as not unnecessarily to interfere with the defendant's business. The Appellate Division modified the judgment so as to provide that the expense of the work should be borne by the plaintiff.

The defendant asserts that the judgment appealed from provides for an unlawful invasion of his property rights. Of course, the court could not authorize the plaintiff to trespass upon the defendant's premises. If, however, he is maintaining a nuisance, he cannot complain of a provision inserted in the judgment for his own benefit. The trial court found that "the business of raising ducks in the surroundings and conditions and manner it is carried on by the defendant is a nuisance" and "that the use of Pine's Stream made by the defendant in his business of raising ducks is not a reasonable use of said stream." The record does not show that the decision of the Appellate Division was unanimous and so the single question is presented on this appeal whether there is any evidence in the record to sustain the said findings, which were duly excepted to by the defendant.

The land along the banks of the stream is marshy. There is a visible flow of water from Pine's stream into the duck ponds, but, since the commencement of this action, the visible outlet has been closed up. When the water in Pine's stream is lowered there is a backflow of water into the stream from the duck ponds and in times of heavy rain the ponds overflow their banks. Chemists called by the plaintiff, who analyzed samples of water taken from the stream above and below the duck ponds before the artificial outlet was closed up, found colon bacilli in a cubic centimeter of water taken below the ponds and none in ten cubic centimeters of water taken above. A chemist called by the defendant, who examined samples taken after the outlet was closed up, found colon bacilli in equal quantities of water taken both above and below the duck

ponds.   The presence of colon bacilli in water indicates the presence of fecal matter from warm-blooded animals and renders the water unwholesome and unfit for human consumption.   The trial court found, among others, the following facts:

"At the time of the commencement of this action the said waters, in polluted and defiled condition as aforesaid, flowed and were carried from the said ponds through said outlet channel to Pine's Stream and Smith's Pond.

"Thereby, the waters of Pine's Stream and Smith's Pond were contaminated and polluted, defiled and sensibly altered, and impaired in quality and rendered unwholesome, unfit and dangerous for human consumption.

"The closing of the outlet from defendant's ponds is not an adequate remedy for this situation.

"The duck faeces and excreta escape from the waters of the ponds and are conveyed by flood and high water into Smith's Pond.

"In times of heavy rain or flood the sedimentation in the ponds, consisting in large part of duck faeces, will be stirred up and then carried in and with the waters of the ponds over the outlet closing into Pine's Stream and to Smith's Pond.

"Thereby, the waters of Pine's Stream and Smith's Pond will be contaminated and polluted, defiled and sensibly altered and impaired in quality and rendered unwholesome, unfit and dangerous for human consumption.

"There is no evidence that any water is at the present time in any manner flowing or percolating from the defendant's ponds into Pine's Stream or Smith's Pond."

The undisputed evidence is that, except when there is a backflow due to the lowering of the water in Pine's stream or an overflow of the ponds due to heavy rains, there is a constant flow of water from Pine's stream through the artificial channel into the duck ponds.

16

This water must find its way back into the stream as it is not to be supposed that all of it evaporates. However, it may be that, under the findings, the judgment must be supported on the theory that the only pollution of Pine's stream from the duck ponds occurs when there is a back-flow due to the lowering of the water in the stream or an overflow due to heavy rains, which according to the evidence are frequent on Long Island. Even on that theory, the judgment may be sustained.

The general rules governing the rights of riparian owners are well established and the bare statement of them will suffice. Each is entitled to a reasonable use of the water flowing by his premises and each is entitled to have the stream preserved in its natural size, flow and purity. (*Strobel* v. *Kerr Salt Company*, 164 N. Y. 303.) The application of those rules depends upon certain principles inherent in the nature of society. Each individual must submit to some restrictions upon his natural rights for the privilege of living in organized society. Those restrictions increase with the increasing complexity and needs of society. The maxim *sic utere tuo ut alienum non lædas* applies and is flexible enough to be applied to changing conditions and circumstances. As each must make a reasonable use of his own, so the restraints which others impose upon that use must be reasonable, and what is reasonable depends on such a variety of circumstances that no hard and fast rule can be laid down. The question is always one of degree.

The court found that the acts of the defendant are violations of certain rules of the state board of health. The question of preserving potable waters from pollution is growing in importance with the increasing density of the population and the growth of urban communities. But we do not consider it necessary to pass upon the effect of those rules or to determine what the state may do in the exercise of the police power to prevent the pollution of potable waters in the interest of the public

health and the general welfare, because we have reached the conclusion that, wholly apart from said rules, the trial court was justified in deciding that the defendant was making an unreasonable use of the waters of Pine's stream as matter of fact, if not as matter of law.

The defendant had the right temporarily to detain or divert the waters of Pine's stream, but the lower riparian owners — and we are considering the plaintiff solely as a riparian owner — had the right to have that water returned in its natural state, save for such slight diminution or pollution as might necessarily occur from a reasonable use. The question in a nutshell is whether it is reasonable for the defendant to divert the water from its natural channel and to return it, laden with the excreta of his domestic animals, when he can with slight trouble prevent such pollution. It is unimportant that those animals happen to be ducks. The plaintiff does not seek to prevent the defendant from raising ducks. It merely asks that he shall conduct that business with some regard to the rights of others. He can allow his ducks to have access to the ponds and by a little labor prevent the pollution of the waters of the stream.

The appellant argues that the plaintiff is permitted by the judgment virtually to appropriate his land without making compensation therefor, and that, if it can justify the restraint imposed in this case, it may with equal reason restrain the owners of land in the watershed, from which it derives its water supply, from carrying on the business of farming in the usual, ordinary way, *e. g.*, from enriching the soil with fertilizers or from using fields on the banks of the stream for pasturage. That method of reasoning ignores the principles which I have already ventured to state, though they may seem trite. As well might it be said that the appellant could maintain a filthy pig sty on the banks of the stream because it would require a trifling amount of work to keep it clean. Of course, the plaintiff cannot appropriate the appellant's

premises without making compensation therefor, but it can insist upon his using those premises so as not unreasonably to impair its rights as a lower riparian owner, and we are of the opinion that he is not aggrieved by a judgment which gives him the choice of abating the nuisance himself or of allowing the plaintiff to abate it for him.

The foregoing is not opposed to anything decided by this court in the case of *George v. Village of Chester* (202 N. Y. 398). The plaintiff in that case brought a suit to restrain the defendant from enforcing certain regulations of the state commissioner of health for the purpose of preserving the purity of the water in a lake from which it derived its water supply. There was no finding that the plaintiff was making or intended to make any unreasonable use of his premises. The judgment of the Special Term, affirmed by the Appellate Division, restrained the defendant generally from enforcing said regulations and specifically from interfering with certain enumerated uses by the plaintiff and his family, guests and lessees of the lake. This court modified the judgment by striking out the general restraining clause, and by providing that the defendant should be restrained from interfering with the enumerated uses by the plaintiff, his family, guests and lessees so long as they were exercised reasonably.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WERNER and CUDDEBACK, JJ., concur; HISCOCK and COLLIN, JJ., dissent.

Judgment affirmed.