## 17694

Clara H. DAVIS, Respondent, v. W. R. CORDELL, Appellant

(115 S. E. (2d) 649)

*Messrs. Hinson & Hamer,* of Greenville, *for Appellant,*

*Messrs. Bolt & Cox,* of Greenville, *for Respondent,*

August 5, 1960.

LEGGE, Justice.

Respondent, owner of a parcel of land in Greenville County, sought in this action to have a contract for the sale of it to appellant: (1) adjudged viod for uncertainty, and (2) cancelled because of alleged failure on appellant's part to perform within a reasonable time certain acts necessary for consummation of the sale. Appeal is from an order of the County Court vacating the contract because of appellant's unreasonable delay. Respondent urges invalidity of the contract as an additional ground for sustaining the judgment.

The challenged instrument, which was signed by both parties on December 23, 1958, was attached to the complaint as an exhibit, and reads as follows:

"Contract

"State of South Carolina
"County of Greenville

"This agreement entered into by and between W. R. Cordell, hereinafter known as the purchaser and Clara H. Davis, hereinafter known as the seller:

"Witnesseth:

"In and for the considerations hereinafter expressed, the seller agrees to sell and the purchaser agrees to buy that certain tract of land in the County of Greenville, State of South Carolina in the Berea Section containing approximately 12½ acres, more or less, and being the 17.7 acre tract inherited from O. R. Davis, less approximately 4 acres conveyed to the Lions Club in deed book 545 at page 59 and less approximately ½ to 1 acre to be retained by the seller on the Lions Club Road and being described as follows: Beginning at an iron pin 199.98 feet on the Lions Club Road and running thence N 30-30 W, 66 feet; thence S 59 W, 1,000 feet, more or less, to an iron pin; thence S 45 E, 288.5 feet to an iron pin; thence S 62 E, 615.8 feet; thence along the Lions Club property N 55-14 E, 605 feet; thence N 30-30 W, 573 feet.

"It is understood and agreed that an accurate survey shall be made and that based thereupon the purchaser shall pay the sum of $500.00 per acre for said property.

"The seller does hereby acknowledge receipt of $100.00 down, binding this contract, as part payment for the tract after same is conveyed and the method of payment will be as follows: the purchaser is desirous of cutting said property into lots and for each lot released by the seller to the purchaser the sum of $500.00 shall be paid which shall be applied on the total purchase price to be determined by the survey and total acreage.

"The seller does hereby grant unto the purchaser a right-of-way and easement for purposes of ingress and egress over the northern 15 feet of the tract retained by seller so as to connect this property with the Lions Club Road.

"It is understood by and between the parties to this contract that once the entire consideration has passed the seller will convey unto the purchaser any and all property not conveyed at that time and the seller will convey such lots as desired by the purchaser prior to the payment of the full

purchase price provided the purchaser shall pay unto the seller the sum of $500.00 for each lot.

"Witness the hands and seals of the parties hereto binding ourselves, our heirs, successors and assigns this 23rd day of December, 1958."

The complaint, dated August 27, 1959, after alleging that, except for the payment of $100.00 made when the contract was signed, the defendant had paid the plaintiff nothing, proceeds as follows:

"IV. That the plaintiff is informed, believes and alleges that said contract is so vague, uncertain, and does not sufficiently identify and describe the subject-matter of said contract and sale, and has no limitation as to time of performance that it is unenforceable, invalid and void; that an unreasonable time has elapsed since the execution of said contract and plaintiff alleges that she is entitled to have said instrument, which is a cloud upon her title, cancelled and surrendered; that the plaintiff has no adequate remedy at law to remove said cloud or to enforce disaffirmance of said contract.

"V. That the defendant has entered upon, and threatens to continue to trespass upon her property for the laying out and cutting of streets and roads on said property under this invalid and void contract, and unless restrained and enjoined he will continue to do so.

"VI. That the plaintiff has been damaged in the sum of fifteen hundred ($1,500.00) dollars less the one hundred ($100.00) dollars paid by the defendant at the time of the execution of said alleged invalid and void contract.

"Wherefore plaintiff prays:

"1. That a Rule to Show Cause do issue requiring defendant to show cause, if any he has, why he should not be restrained from entering upon her property.

"2. That the court do issue an order that the contract signed on the 23rd day of December, 1958, be declared invalid and void and surrendered.

"3. That the plaintiff have judgment against the defendant in the sum of one thousand four hundred ($1,400.00) dollars.

"4. For the costs of this action."

The record before us makes no mention of any answer to this complaint. It appears that on August 27, 1959, the court, upon consideration of the complaint, issued a temporary restraining order and a rule requiring the defendant to show cause on September 1, 1959, why an injunction *pendente lite* should not issue; and that the defendant filed a return to the rule, requesting that the temporary restraining order be revoked and the temporary injunction refused, upon the following grounds:

"1. The contract to purchase is valid and binding on both parties.

"2. That the contract shows on its face that it is a binding contract to purchase real estate and time is not of the essence. The attached affidavits substantiate that time was not of the essence.

"3. That W. R. Cordell, the purchaser, acted with due diligence and was performing the contract within a reasonable time.

"4. That the acts of the plaintiff in refusing to permit the surveyor to complete the survey and applying for this temporary restraining order is delaying the completion of this contract.

"5. That under the conditions and circumstances surrounding this transaction equity should require plaintiff to carry out her portion of the agreement."

The affidavits referred to will be discussed later; they were by the defendant Cordell, Clifford C. Jones, and J. Mac Richardson. The agreed statement in the transcript is to the effect that "the matter came on to be heard by the County Judge on the merits on November 6, 1959"; that testimony of the defendant was not transcribed, but was in accord with his affidavit before mentioned; that Mr. Jones and Mr. Rich-

ardson submitted their affidavits, before mentioned, as their testimony; and that the hearing was then adjourned to November 23, 1959, at which time the plaintiff's affidavit (to which we shall shortly refer) was accepted as her testimony, and her daughter, Mrs. Wyatt, testified orally. We summarize below the evidence thus presented to the trial court.

W. R. Cordell, the defendant: that he has been engaged in the real estate and contracting business for about thirteen years, during which time he has purchased many lots in Greenville County, has developed some subdivisions, and has built and sold numerous homes. That for about two years prior to the transaction here involved Mrs. Davis had been coming to defendant's office, trying to sell the property to her nephew for $500 per acre; and that shortly before Christmas, 1958, the nephew having declined to purchase it at that price, Mrs. Davis and her daughter Mrs. Wyatt came to defendant's office and urged him to purchase it, saying that they needed $100 for the Christmas holidays. That defendant agreed to purchase the property and to pay for it as provided in the contract attached to the complaint. "That Mrs. Davis told him that she did not want all of the money paid at one time because of income tax she would be required to pay and that she preferred to have the money coming in at various times in accordance with the agreement in order that she might live on the money." That defendant engaged an attorney, gave him the information concerning the oral agreement between the parties, and asked him to draw the contract accordingly; that on the day of its execution Mrs. Davis and Mrs. Wyatt arrived at the attorney's office before the defendant; that upon defendant's arrival the attorney read the contract and all agreed to it; and that thereupon it was signed and defendant made the cash payment of $100 which up to the time of the hearing on November 6, 1959, plaintiff had not repaid or tendered to him. That shortly after Christmas, 1958, defendant met with Mr. C. C. Jones, a civil engineer, on the property and, Mrs. Davis having given defendant a plat of it dated October 6, 1918, Mrs.

Davis' daughter, Mrs. Wyatt, went over the property with Mr. Jones and pointed out all corners to him. That thereafter in July, 1959, Mr. Jones not having completed his survey despite defendant's urgings, defendant engaged another surveyor, Mr. J. Mac Richardson, who, according to defendant's information, went to the property on August 27, 1959, to survey it, but was stopped by Mrs. Davis. That had Mrs. Davis not stopped him, Mr. Richardson could have completed the laying out of this property in time to have submitted it to the Planning and Zoning Commission at its meeting on September 7, 1959, for its approval as required by law. That defendant has incurred considerable expense, and will incur additional expense and loss because of Mrs. Davis' acts; and that in May or June, 1959, when defendant had a Mr. Quinn use his bulldozer to clear up some trees and undergrowth to assist Mr. Jones with his surveying, neither Mrs. Davis nor her daughter made any complaint. That if the court will permit him to proceed, defendant will be able to pay Mrs. Davis $2,000 for the release of four lots immediately after the survey has been completed and the plan approved by the Planning and Zoning Commission, which according to his information will entail a delay of about three additional months. That if permitted to go forward, defendant will have to spend about $5,000 for making the survey, laying out the lots, and installing water pipes, etc., which he is ready, able and willing to do.

C. C. Jones, Civil Engineer: That shortly after his employment by the defendant, he met the latter at the premises; that Mrs. Davis gave the defendant a plat of the property surveyed by W. A. Hester, October 6, 1918; that Mrs. Wyatt walked over the property with the witness and pointed out the boundaries and corners; that in connection with the survey and laying out of the subdivision witness went on the property a number of times during the next few months, but because of prior commitments was unable to complete his survey prior to July, 1959, when the services of another surveyor were obtained. That during this time defendant called

the witness several times and urged him to complete the project.

J. Mac Richardson, Registered Land Surveyor: That for the past two years he has had more surveying work than he could keep up with, and he is informed and believes that a like situation exists with other surveyors and engineers in connection with subdivision work. That about July, 1959, defendant urgently requested him to lay out the subdivision for him; and, because of the pressure of the friendship between the witness and a gentleman who was interested in defendant's behalf, the witness, who in the normal course of things could not have reached defendant's project for three months, gave it priority and went on the property to survey it on August 27, 1959, with the intention of completing the survey before September 7, 1959, when the Zoning Board would meet; and that after he had started the survey Mrs. Davis ordered him to stop. That in the opinion of the witness the lapse of time after December 23, 1958, the date of the contract, was not unreasonable or unusual.

Mrs. Clara H. Davis, the plaintiff: That she had never gone to defendant's office until December 23, 1958, the date upon which the contract was signed; that defendant understood that she needed money for living expenses and assured her that commencing in the early part of 1959 a portion of the money stated as consideration in the contract would be paid from time to time in instalments; that in January or February, 1959, she demanded that he make arrangements to pay her some money under the contract, but without result; that she and her daughter went to see him several times thereafter in an effort to obtain some payment, and on each occasion he stated that he was without funds; that it was not until the latter part of July that someone went on the edge of her property with a bulldozer, she being away from home at the time; that, after being convinced that the defendant could not comply with the contract within a reasonable time, she sought counsel and was advised that she had the right to terminate the contract, which she elected to do;

and that she "does now (September 1, 1959) tender unto the said W. R. Cordell, or his attorney, and pay into court the sum of one hundred ($100.00) dollars", although she has sustained damage in excess of that amount.

Mrs. Sadie Wyatt, plaintiff's daughter: That she and her mother went several times to defendant's office to get money on the contract, but were told by him that he did not have the money. That she did not point out all of the stakes on the property to Mr. Jones; and that she does not know where he obtained the plat of it.

The complaint here jumbles two inconsistent causes of action: one attacking the contract as void because of vagueness and uncertainty, the other seeking rescission and damages. The latter assumes a valid contract; the theory of the former is that there was no contract. But election between the two was not demanded, and they were tried together. In the order under appeal the trial judge, holding that the plaintiff was entitled to rescind, stated that he would not pass upon the issue of invalidity; but that he did resolve that issue against the plaintiff's contention is implicit in his holding, for there can be no rescission of a nonexistent contract.

In our opinion the contract in question reveals no such vagueness and uncertainty as would render it void. It described the property sufficiently to identify it. Since from the original tract of 17.7 acres that had come into plaintiff's ownership by inheritance approximately four acres had been conveyed by her to the Lions Club and she was also to retain approximately one-half to one acre on the Lions Club Road, it properly provided that an "accurate survey" should be made in order to determine precisely the metes and bounds of the remaining twelve and one-half acres more or less. We do not think that failure to describe and locate more precisely the lot to be retained by the seller was fatal to the contract, in view of the fact that payment by the purchaser was to be made on the basis of the acreage, not

the location, of the remainder of the tract. There is nothing so indefinite about the amount of the purchase price as would warrant our declaring the contract void for uncertainty in that regard. Nor do we find fatal uncertainty in the provision for conveyance of lots upon payment by appellant of $500 for each. It is true that in this provision the area of a lot so to be conveyed is not specified; but if that clause is construed in connection with the earlier one fixing the purchase price at $500 per acre, it would seem clear that the appellant, upon paying $500, could not have demanded conveyance of a lot larger than an acre.

As to the time for payment of all or any part of the purchase price (other than the down payment of $100), the contract is completely devoid of certainty. For all that appears on its face, appellant or his heirs or assigns could have deferred payment as long as they might wish, for no obligation to pay was to arise until he or they might desire to have one or more lots conveyed to him or them or another. Uncertainty in that regard does not, however, render the contract void; a reasonable time will be implied. *Butler v. O'Hear,* 1 Desaus. Eq. (1 S. C. Eq.) 382; *McMillan v. McMillan,* 77 S. C. 511, 58 S. E. 431; *Speed v. Speed,* 213 S. C. 401, 49 S. E. (2d) 588. We conclude, then, that the trial judge was correct in treating the contract as not void and in proceeding to consider the result, upon appellant's rights and those of respondent, of the former's delay in doing those things which the contract contemplated that he would do in order to effect payment of the purchase price within a reasonable time.

Breach of a contract, to justify its rescission, must be so substantial and fundamental as to defeat the purpose of the contract. 12 Am. Jur., Contracts, Section 440; 17 C. J. S., Contracts, § 422; *Pearson v. Matheson,* 102 S. C. 377, 86 S. E. 1063; *Childress v. C. W. Myers Trading Post, Inc.,* 247 N. C. 150, 100 S. E. (2d) 391. Here the contract specified no precise date upon which appellant was required to pay the balance of the purchase price;

by presumption of law, he was required to do so within a reasonable time. In such a case mere delay in performance will not give rise to the right of rescission unless. it be such as to warrant the conclusion that the party delaying does not intend to perform. 12 Am. Jur., Contracts, Section 441; 17 C. J. S., Contracts, § 422; *Luce v. New Orange Industrial Association,* 68 N. J. Law 31, 52 A. 306; *Shpargel v. Emerson Land Co.,* 258 Mich. 222, 241 N. W. 891.

Assuming, as may be inferred from the order under appeal, that in the circumstances of this transaction payment within a reasonable time, and some payment within eight months, after its execution was so substantial and fundamental a requirement of the contract that appellant's failure in that regard might justify the respondent in seeking its rescission, such failure on appellant's part did not in itself rescind it or terminate appellant's rights under it. It was respondent's duty, if she intended to rescind, promptly and unequivocally to notify appellant of her intention to do so. 12 Am. Jur., Contracts, Section 446; 17 C. J. S., Contracts, § 435; *Mennessy v. Bacon,* 137 U. S. 78, 11 S. Ct. 17, 34 L. Ed. 605; *Taylor v. Goelet,* 208 N. Y. 253, 101 N. E. 867, Ann. Cas. 1914D, 284; *Lebanon Valley Iron & Steel Co. v. American Shipbuilding & Dock Corp.,* 4 Cir., 279 F. 859. For rescission is an equitable remedy; and where one party to a contract that fixes no time for its performance by the other seeks to rescind it because of the latter's delay, equitable considerations would seem especially appropriate. In *Thompson v. Dulles,* 5 Rich. Eq. (26 S. C. Eq.) 370, the Chancellor's decree, approved on appeal, stated the following principle which, applied there to one who had contracted to convey, is no less applicable to one who has contracted to purchase:

"On the other hand, where no time is fixed in the contract, the party who is to make the conveyance will not be permitted, on that account, to trifle with the interests of the opposite party by unnecessary delay; and it is in the power of that party to fix some reasonable time—not capriciously

or unreasonably, or for the purpose of surprising him, and thus getting clear of the bargain, but a reasonable time, according to the circumstances of the case—within which he will expect the title to be made, at the peril of rescinding the agreement.

"These principles are clear. There is no mystery about the doctrine. Good faith is to govern in all cases."

The rule is well expounded in *Taylor v. Goelet, supra,* from which we quote [208 N. Y. 253, 101 N. E. 868] :

"The basis of the rule requiring notice of intention to rescind is to be found in the reluctance of the courts to enforce penalties and forfeitures in matters of contract. The courts generally require the party complaining of a breach of contract to prove his actual damages and limit his recovery to the amount thereof. Courts do not allow a rescission of the contract for mere delay in performance unless the parties have made time of the essence of the contract * * *. The rule would seem to apply as aptly to contracts which when made leave indefinite the time of performance as to contracts from which time as an essential element has been removed by acquiescence of the parties. Time is not of the essence of a contract which is to be performed within a reasonable time, but either party can make it so, whenever he desires, by simply giving notice to that effect. If notice is not given, the contract continues in force. It may be sued on as an existing contract and damages for its breach recovered. But it cannot be treated as at an end and a forfeiture enforced * * *. The rule is a just one and is necessary to protect the unwary. It is to be understood, however, that the notice of intention to rescind is only necessary when the party to the contract proceeded against has merely delayed performance, not where he has abandoned the contract, or treated it as terminated, or where he has refused to perform."

Respondent was bound by her contract to allow appellant a reasonable time for payment of the purchase price. The just and equitable principle before men-

tioned required that, before termination of his rights under the contract by the extreme remedy of rescission, appellant be given express, unequivocal and reasonable notice that unless within a specified time he should pay the purchase price in full or pay a definite part of it and make satisfactory arrangement for the time of payment of the balance, his rights would be so terminated. It appears that on several occasions after its execution respondent made demand upon appellant for "some money" under the contract; but never did she notify him of any definite time after which, upon his having failed to pay, she would rescind it. On the contrary, eight months after the contract had been executed, and without any previous notice of her intention to rescind it, she brought this action and on the same day obtained a temporary restraining order preventing him from proceeding with the survey of the property. Through the injunctive power of the court that restraint has continued ever since.

Respondent's cause of action for rescission falls because she failed to give reasonable notice of her intention to rescind; and the judgment of the County Court must be reversed, but without prejudice to her right, if and when so advised, to institute any action not in conflict with the views herein-before expressed.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.