1848

MULLINS, INC., Respondent v. L.D. BENTON and Dorothy Benton, Appellants.

(419 S.E. (2d) 838)

Court of Appeals

*William Isaac Diggs,* of *Law Offices of John R. Clarke,* North Myrtle Beach, *for appellants.*

*J. Jackson Thomas,* of *Stevens, Stevens & Thomas,* Myrtle Beach, *for respondent.*

Heard May 11, 1992; Decided July 13, 1992.

Reh. Den. Aug. 20, 1992.

CURETON, Judge:

This is an action for specific performance of an option contract. L.D. and Dorothy Benton own real property in Horry County. J.R. Mullins is the president of Mullins, Inc. On January 25, 1988, the Bentons and Mullins, acting on behalf of

Mullins, Inc., executed a document designated as an "option" relating to the property of the Bentons. In its complaint, Mullins, Inc., alleges the Bentons failed to comply with the terms of the option and sought specific performance. The master entered an order granting specific performance. The Bentons have appealed. We affirm in part, reverse in part, and remand.

The Bentons own a thirty-five unit motel and restaurant, commercial docks, and a private home on property located on the Intracoastal Waterway in Horry County. J.R. Mullins, president of Mullins, Inc., became interested in the property. He and a real estate agent acting on his behalf approached the Bentons about purchasing it. A document was executed by the Bentons and Mullins regarding the property. This document was drafted by the real estate agent and is the basis of the dispute. At trial, the Bentons testified they did not examine the document before signing it and relied upon Mullins's representation that it only granted permission for an appraiser to come on the property to conduct an appraisal. Mullins and the agent testified the document was presented and read to the Bentons before execution and it was made clear to them that this was an option to purchase the property.

The document contained nine provisions. It provided the option would expire sixty days from the date of execution. The consideration expressed was "One Dollar ($1.00) paid by the Optionee to the Optionor." As to the purchase price, the agreement stated:

> The total purchase price shall be determined by independent fee appraisal of the property. Both the Optionor and the Optionee shall obtain, separately and individually, each at his own expense, an appraisal of the entire parcel including land and buildings by a reputable, competent, certified fee appraiser. The appraised values from the two appraisal reports shall then be averaged to arrive at the total purchase price.

The agreement also provided that if the option was exercised, the parties would enter into an "Agreement to Buy and Sell premised upon the provisions as set forth herein." Certain terms were stated in the agreement including a fifteen percent downpayment at closing and owner financing of the bal-

ance "secured by a purchase money mortgage for a period of ten (10) years at an interest rate per annum not to exceed the prevailing prime lending rate at the time of closing."

Mullins, Inc. obtained an appraisal valuing the property at $745,000. On March 25, 1988, Mr. Mullins and the real estate agent went to the Bentons' home to advise them of the amount of the company's appraisal. Mr. Mullins had prepared in advance a letter indicating the corporation was exercising the option to purchase. However, the purchase price was left blank because Mullins did not know the amount of the Bentons' appraisal. The Bentons advised Mullins they had not secured an appraisal and the appraisal obtained by Mullins was too low. Mullins testified he offered to extend the period for obtaining the appraisal but the Bentons refused. At that point, Mullins completed the letter with the value of $745,000 as the purchase price and left it with the Bentons. This action for specific performance ensued.

The master found the parties entered into the agreement knowingly and for a valid consideration. He also found Mullins, Inc. performed its obligation to obtain an appraisal but the Bentons did not. In ordering specific performance of the agreement, the master designated time periods for performance. He gave the Bentons forty-five days in which to obtain an appraisal and provide a copy to Mullins, Inc.[1] The master then allowed Mullins, Inc. fourteen days in which to decide to exercise the option to purchase the property. If the Bentons did not obtain an appraisal within forty-five days then they were required to sell the property for the price of $745,000. The master also ordered that "[Mullins, Inc.] shall have a period of forty-five (45) days from such notification within which to tender its performance requirements (i.e. the 15% downpayment, purchase money note, and mortgage). Upon such tender, [the Ben-

---

[1] Mullins, Inc. did not appeal from the master's decision to allow the Bentons to obtain an appraisal. However, at oral argument, Mullins Inc. took the position the Bentons should not now be allowed to obtain an appraisal because more than forty-five days have passed from the date of the master's order and the appeal did not stay that time requirement. The Bentons asserted the master expressed an intent to delay all terms of his order during an appeal by language in his order stating "[a]ny appeal of this order shall delay the time for performance until the appeal is finally heard and determined." We conclude the master clearly expressed his intention to delay the imposition of the time limits of his order during appeal.

tons] shall tender to [Mullins, Inc. their] performance requirement (i.e. a conforming deed of conveyance for the property)."

The Bentons primary argument on appeal is the court erred in ordering specific performance of the option because it is unfair and inequitable. They attack the stated consideration of one dollar as grossly inadequate. They claim the appraisal obtained by Mullins, Inc. greatly undervalued the property. They also complain the agreement is unfair because it calls for owner financing without specific requirements of periodic payments, a personal guarantee by Mr. Mullins, and a recordable mortgage.

Although the Bentons raised at trial their failure to read the agreement based upon Mr. Mullins's purported statements, the master found the Bentons knew or should have known of the contents of the agreement before they signed it. While Mr. Benton was a person of limited formal education, the evidence indicates he had accumulated property of substantial worth. Mrs. Benton could read but chose not to review the agreement. We find no error by the master on this issue. *See Stanley Smith & Sons v. D.M.R. Inc.*, — S.C. —, 415 S.E. (2d) 428 (Ct. App. 1992) (duty to read agreement before execution of it).

As to the one dollar stated consideration, the consideration for an option contract which is sought to be specifically enforced is the purchase price agreed upon and not the nominal amount paid for the option. 71 Am. Jur. (2d) *Specific Performance* § 143 (1973). One dollar may be adequate consideration for an option if the consideration for the purchase of the land is adequate. *Id.* Therefore, we reject the argument that there was inadequate consideration for the option agreement.

We agree with that part of the master's order which required the Bentons to obtain an appraisal of the property. They agreed to use the appraisal method to determine the purchase price of the property. They should not be allowed to refuse to obtain an appraisal and thereby invalidate the option based upon their nonperformance.[2] We also

---

[2] We previously noted Mullins Inc. did not appeal from that portion of the master's order which gave the Bentons the right to obtain an appraisal. We note, however, an argument could have been made at trial that the Bentons waived their right to an appraisal and the purchase price of the property was

concur with that portion of the master's order which gave Mullins, Inc. fourteen days in which to decide to exercise the option once the Bentons obtained their appraisal. This is a fair resolution of the stalemate created by the Bentons.

In his order, the master imposed certain other time constraints on the parties after Mullins, Inc. decided whether or not to exercise the option. Although understandable, we find the master acted prematurely in ordering specific performance of an anticipated contract to buy and sell real property. It is still a matter of speculation whether Mullins, Inc. will exercise the option once the purchase price is determined. The courts will only enforce an option consummated by acceptance. Acceptance of the option creates a bilateral contract between the giver and the holder of the option which is binding on both parties. *Lindler v. Adcock*, 250 S.C. 383, 158 S.E. (2d) 192 (1967). Given the circumstances, there has been no acceptance of the option by Mullins, Inc. Therefore, we reverse that portion of the master's order which ordered the parties to tender performance requirements within certain periods after the acceptance of the option. The matter is not yet ripe for determination.

The Bentons also argued specific performance should not be ordered because all the material terms of the contract were not clear and definite. We have held the issue of specific performance of the possible contract to buy and sell is not yet ripe for determination. However, we note the option defines the property, provides a method for determining the price, and specifies the downpayment, interest rate, and length of the purchase money mortgage. While there is no specification of the timing of the periodic payments (i.e. monthly, quarterly, yearly, etc.) we do not believe this omission would be fatal to a decree of specific performance because reasonable terms could be implied by the court. *See Davis v. Cordell*, 237 S.C. 88, 115 S.E. (2d) 649 (1960) (contract not void for failure to designate time for payment of all or any part of purchase price).

Affirmed in part, reversed in part, and remanded.

GOOLSBY, J. and LITTLEJOHN, Acting J., concur.