998 F.2d 1009
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
IRVIN TEMPLE & ASSOCIATES, a South Carolina General
Partnership, Plaintiff-Appellant,
v.
K MART CORPORATION, Defendant-Appellee.
 No. 92-2040.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 30, 1993.
Decided: July 28, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, District Judge. (CA-91-3728-2)
 Robert E. Stepp, Glenn, Irvin, Murphy, Gray & Stepp, P.A., Columbia, South Carolina, for Appellant.
 Howell V. Bellamy, Jr., Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., Myrtle Beach, South Carolina, for Appellee.
 Wilmot B. Irvin, Blaney A. Coskrey, III,Glenn, Irvin, Murphy, Gray & Stepp, P.A., Columbia, South Carolina, for Appellant.
 Henrietta U. Golding, Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., Myrtle Beach, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, SPROUSE, Senior Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The action underlying this appeal was brought by Irvin Temple & Associates ("ITA"), a South Carolina general partnership, to enforce an option to buy land from the Kmart Corporation. The district court dismissed the action pursuant to Federal Rule of Civil Procedure 50(a) and ITA appeals. We affirm.
 
 
 2
 ITA is a general partnership formed to develop shopping centers. In September 1990 it obtained an option from St. James Development Company to purchase twenty acres of land on James Island, South Carolina, to build a shopping center. Kmart expressed interest in building and operating a store on the property, and on January 24, 1991, it entered into a written lease with ITA for shopping center space. After unsuccessful attempts to finance purchase of the land, ITA approached Kmart to take an assignment of its option from St. James Development. The two parties agreed to the assignment with the provision that after Kmart purchased the property, Kmart would give ITA an option to purchase it at the price Kmart paid St. James. The agreement also terminated Kmart's lease.
 
 
 3
 On May 9, 1991, Kmart purchased the property from St. James for $2,019,747.02 and executed the promised option to ITA. The deadline for exercising the option was November 4, 1991. It provided in part:
 
 
 4
 ITA may exercise the aforesaid option only by written notice which is received by Kmart on or before November 4, 1991, time being of the essence. If Kmart does not receive ITA's notice by November 4, 1991, the option herein granted shall immediately ... terminate, whereupon ITA shall have no further rights hereunder....
 
 
 5
 ....
 
 
 6
 ITA shall not assign or transfer the option herein granted or this Option without the prior written consent of Kmart, which consent may be withheld by Kmart in the exercise of its sole and unfettered discretion, and any such assignment without Kmart's consent shall be void and of no effect. Subject to the foregoing, if this Option or the option herein is assigned by ITA, ITA shall nevertheless remain primarily liable to Kmart for the performance of the obligations hereunder on the part of ITA to be performed as obligations of a principal and not of a guarantor or surety, as though no such assignment had been made.
 
 
 7
 After negotiating with potential lenders and developers, ITA submitted a proposal to Kmart within the agreed time frame with terms significantly different from those specified in the option. Kmart rejected it.[1] In the meantime, Kmart negotiated with others concerning potential development of the property.
 
 
 8
 Finally, on November 1, 1991, just three days before the option was to expire, ITA submitted another proposal to Kmart. Under this proposal, ITA would assign its option to Baker & Baker, a real estate development company, subject to Kmart's approval. In its proposal letter, received by Kmart on November 4, ITA purported to exercise the option subject to several conditions: Kmart's approval of an assignment of ITA's rights to Baker & Baker, a lease amendment from Kmart, a written certification from Food Lion that its lease was in full effect and assignable to Baker & Baker, and Kmart's release of ITA from all obligations. None of these conditions were included in the option. On November 6, Kmart rejected ITA's proposal, and ITA brought this action alleging breach of contract, bad faith, fraud, and breach of contract accompanied by fraudulent act. Following ITA's presentation of evidence on the liability aspect of its contract claim, the court granted Kmart's Rule 50(a) motion for dismissal of the claims for breach of contract, bad faith, and breach of contract accompanied by fraudulent act. The next day, after hearing ITA's evidentiary proffer relating to its fraud claim, the court likewise dismissed it.
 
 
 9
 On appeal, ITA argues that its letter to Kmart of November 1 was an effective exercise of the option or, at the least, it created a jury question on that issue. Alternatively, ITA urges that Kmart had a duty to consider in good faith the new conditions submitted in ITA's proposal. ITA also advances an argument, couched in general terms, that Kmart's rejection of their proposal violated "pre-existing contractual obligations and a covenant of good faith and fair dealing." In addition, ITA renews its fraud claims, and for the first time, raises a claim of judicial bias.
 
 
 10
 We agree with the district court that this case involves nothing more than a failure by ITA to properly exercise its rights before the option expired on November 4, 1991. Under South Carolina law, "courts will only enforce an option consummated by acceptance." Mullins, Inc. v. Benton, 419 S.E.2d 838, 840 (S.C. Ct. App. 1992). Acceptance of the option then creates a bilateral contract, binding both parties. Id. The option here was not a contract for sale-it was an irrevocable offer until November 4, with specific terms that would, if complied with, create a contract for sale. Rather than exercising the option on its terms, ITA's letter to Kmart stated that it would exercise the option only if Kmart would consent to an assignment, release ITA from all obligations, renegotiate the rent, and condition the purchase on a valid lease between Food Lion and Baker & Baker. Because ITA failed to comply with the option's terms, no rights were created extending beyond the option period. See Lindler v. Adcock, 158 S.E.2d 192, 194 (S.C. 1967) (acceptance of an option must be unequivocal and unconditional).
 
 
 11
 There is record evidence from which one might infer that Kmart officials had hoped ITA would not succeed in exercising the option and that it preferred other entities to develop the property. There is no evidence, however, that Kmart acted in bad faith in dealing with ITA or in refusing ITA's conditional attempt to exercise the option. Nor is there evidence to support ITA's claim for fraud. We are, therefore, of the view that the district court committed no error in dismissing these claims.
 
 
 12
 Although ITA did not allege judicial bias at trial, it urges us to reverse the judgment of the district court because the trial judge's demonstrated prejudice against it during the trial violated its due process rights or, short of that, requires a new trial under the law governing judicial conduct. See 28 U.S.C. # 8E8E # 144 and 455.[2] In support of these contentions, ITA points to numerous colloquies that occurred during trial in which the judge became impatient or angry with its counsel. ITA points to the court's reactions to counsel's attempt to argue its case during its opening statement, impatience with its manner of examining witnesses, and responses to its counsel's general conduct during the litigation. Although reflecting irritation on the part of the trial judge, which might better have been suppressed, this is not the type of judicial conduct that violates § 144 or § 455. Not only isITA's complaint of judicial prejudice untimely,[3] but the judge's actions did not demonstrate the type of predisposition emanating from extra-judicial sources that requires recusal or reversal. See In re Beard, 811 F.2d 818, 827 (4th Cir. 1987) ("[A]1leged bias must derive from an extra-judicial source [and] ... result in an opinion on the merits on a basis other than that learned by the judge from his participation in the matter.").
 
 
 13
 Likewise, there is no merit to ITA's contention that its due process rights were violated. As we have said, "[a]1legations of bias or prejudice ... involve difficult subjective determinations and 'only in the most extreme of cases would disqualification on this basis be constitutionally required.' " Aiken County v. BSP Div. of Envirotech Corp., 866 F.2d 661, 678 (4th Cir. 1989) (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986)).
 
 
 14
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 ITA also suggested a joint venture between Kmart and ITA, which Kmart rejected
 
 
 [2]
 Section 144 provides:
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 The second statute, 28 U.S.C. § 455, provides in relevant part:
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 (b) He shall also disqualify himself in the following circumstances:
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....
 
 
 [3]
 "In general, '[o]ne must raise the disqualification of the ... [judge] at the earliest moment after knowledge of the facts.' " United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990) (quoting Satterfield v. Edenton-Chowan Bd. of Educ., 530 F.2d 567, 574 (4th Cir. 1975)). Here, ITA claims that the district judge became biased against it when he found out that ITA had filed a lis pendens, shortly before it filed its complaint on December 13, 1991. ITA, however, did not assert until this appeal that the judge was biased