**PAULO MOANA, Plaintiff,**

**v.**

**PAGOFIE FIAIGOA, Defendant.**

High Court of American Samoa

Trial Division

CA No. 114-00

May 23, 2001

Before RICHMOND, Associate Justice, LOGAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, David P. Vargas
For Defendant, *Pro* Se

OPINION AND ORDER

Plaintiff Paulo Moana ("Moana") brought this action to recover damages against defendant Pagofie Fiaigoa ("Pagofie") for alleged breach of contract and fraud. Trial was held on April 6, 2001. Moana, his counsel, and Pagofie ware present. The Court heard testimony and has considered the evidence.

### Discussion

### Facts and Contentions

Moana is a citizen of Samoa but a long-term resident of American Samoa. Moana and Pagofie have known each other for a number of years, and Pagofie was aware of Moana's citizenship. Moana wanted to purchase land here for his home, and he heard that Pagofie was selling land located in Tafuna near where Moana's in-laws had earlier purchased land from Pagofie.

Pagofie and Moana met on February 14, 2000 and made an oral agreement under which Pagofie agreed to sell to Moana, and Moana agreed to buy from Pagofie, a quarter acre parcel of land in Tafuna for $40,000. Under the terms of the agreement, Moana paid $5,000 as a down payment and was to pay $500.00 by the end of each month, starting in March 2000, until the purchase price was paid in full. Pagofie would then convey title to the land by deed to Moana as individually owned land.

The down payment was paid by a business check of S&T Produce Co., owned by Siufaga Fanene ("Fanene"), a gift to Moana for lengthy service as an employee of Fanene's business. The check was payable to Pagofie. The purpose line on the check reads: "Down for Paulo Moana's 1/4 Acre Land." Pagofie was hesitant about taking a check of another's business for this purpose, but he knew Moana's relationship with Fanene and did accept it.

97

Having been so advised by Fanene, Moana told Pagofie that the agreement must be put in writing, and Pagofie agreed to have the paperwork prepared by his attorney. Before the end of February 2001, Moana called Pagofie several times to ask about the paperwork, and Pagofie kept assuring him that it would be ready the next day. Finally, Moana went to see Pagofie, and Pagofie told him not to worry because the paperwork would be forthcoming. Pagofie also gave Moana permission to build a house on the land before payment of the purchase price was complete.

On March 27, 2000, Moana again called Pagofie, who once more assured him the paperwork would be done. On March 28, 2000, relying on Pagofie's word, Moana paid Pagofie the first monthly installment of $500, plus $400 for a survey of the land. This payment of $900 was made by a cashier's cheek payable to Pagofie. The bank's receipt for the check bears the notation: "From Paulo Moana $400 Land Survey $500 1st Payment."

As the deadline for the April installment approached without any paperwork produced, including a survey of the land, Moana was increasingly concerned about Pagofie's intentions. Then, on April 26, 2000, Pagofie told Moana that the purchase price of the land would be increased by $5,000 to $45,000. Moana refused to agree to this increase. Believing that Pagofie never intended to carry out the agreement, Moana also advised Pagofie that he no longer wanted to buy the land and demanded that Pagofie refund the $5,900 he had paid to that point. Pagofie refused to refund the monies paid, and this action was filed upon his continuing refusal to do so.

Based on his understanding of the change in the law in 1999, Pagofie said that he thought Moana as an alien could not acquire title to land in American Samoa.[3] He claimed, however, that he expected the title would be put in the names of Moana's children who were born here. Pagofie also acknowledged that the land was his family's communal land, not his individually owned land, but according to him, he as the *sa'o* of the

---

[3] The change in the law is not free of ambiguity. P.L. No. 26-6 (1999) modified definitions in A.S.C.A. § 37.0201 affecting land ownership to read as follows:

(c) "Native" means a full-blooded Samoan person of Tutuila, Manua, Aunu'u, or Swains Island.
(d) "Nonnative" means any person who is not a native under subsection (c) above.

However, because the central issue in this action concerns concerns breach of contract rather than real property ownership, we need not reach the question of the proper interpretation of the new law.

family did obtain his family's consent to convert the land to individually owned land and consummate the transaction. Pagofie stated that he explained both of these matters to Moana in February 2000. Moana denied that Pagofie made any such explanations.

Pagofie apparently gave the funds paid by Moana to his mother and other family members to spend. He insisted that he intended to perform the agreement, and that he is still prepared to do so. He testified that the delay initially came about because he was still looking for an attorney to prepare the paperwork and a surveyor to survey the land. He claimed that Moana breached the agreement by not paying the April and May installments, and that Moana confirmed the breach in June 2000 when he informed Pagofie that Fanene had promised Moana land for his home at no cost. However, Fanene actually made this offer to Moana only about two or three months before the trial, well after the deal soured.

Pagofie testified that he did not return the funds paid by Moana because Moana did not truthfully promise to pay the purchase price for the land and because he, Pagofie, spent considerable time, including efforts to persuade his family to sell the land, on the proposed transaction. He argued that he will still honor the agreement, and because Moana broke his promise to pay, he should, in any event, be permitted to retain at least 25% of the amount paid.

Although the parties do not dispute the existence of an oral land conveyance agreement, the agreement must fulfill certain statutory requirements to be valid. Accordingly, we next discuss the applicability of these requirements to the agreement at issue in this case.

A. Statute of Frauds

■■■ American Samoa law does not recognize a contract for the sale of real property unless it is in writing, or has been partially performed. A.S.C.A. § 37.0211. The writing prescribed by statute, commonly known as the statute of frauds, calls for "some note or memorandum . . . subscribed by the party to be charged." *Id.* The writing need not, therefore, be a formal document.

■ Nonetheless, the note or memorandum should "completely evidence the contract which the parties made by giving all of the essential or material terms of the contract." 72 AM JUR 2D *Statute of Frauds* § 339 (1974). In *Cousbelis v. Alexander*, the court concluded that notations on a check were sufficient to satisfy the statute of frauds. 54 N.E.2d 47, 48-49 (Mass. 1944). The parties to the contract were the payee (seller) and drawer of the check (buyer); the seller cashed the check, which on its face noted the land's street location, the only land owned by the seller,

and the land's square foot price. *Id.*; *see also Kidd v. Kidd*, 393 P.2d 403, 405 (Cal. 1964) (finding decedent's signed receipt combined with two checks totaling agreed upon purchase price satisfied the statute of frauds).

■ On the other hand, if the parties have not reduced the essential terms of a land conveyance to writing but have partially performed the contract, A.S.C.A. § 37.0211 authorizes the Court to enforce the oral contract. We have recognized the Court's explicit power to compel specific performance of a partially performed contract. *Manoa v. Jennings*, 21 A.S.R.2d 23, 25 (Land & Titles Div. 1992); *see also Blue Pac. Mgmt. Corp. v. Paisano's Corp.*, 23 A.S.R.2d 58, 62 (Trial Div. 1992).

Arguably, the notations on the down payment check and cashier's check, coupled with Pagofie's endorsement on the down payment check, are sufficient evidence of this land purchase agreement to validate the agreement for purposes of A.S.C.A. § 37.0211. However, we need not rule on the sufficiency of the writings. Instead, we find that based on the facts of this case, Moana's payments constitute part performance giving him entitlement to specific performance of the contract if he still desired to purchase the land. Understandably, however, he has elected to pursue breach of contract damages as his remedy in the present situation.

B. Breach of Contract

■ When a party to a contract breaches the contract, the other party may be entitled to the equitable remedy of rescission. *See Davis v. Cordell*, 115 S.E.2d 649, 654 (S.C. 1950). "Breach of a contract, to justify rescission, must be so substantial and fundamental as to defeat the purpose of the contract." *Id.* at 654.

■ In this case, the parties did not agree on a specific time for Pagofie to survey the land, and in such cases, a reasonable time will be implied. *Id.* Clearly, Pagofie breached the agreement when he failed over a two-month period, a more than reasonable time, to produce a written contract to fully document the terms of the land purchase agreement and to provide a survey of the quarter acre of land involved, as Moana reasonably requested and expected. In fact, it was conceivable from Pagofie's delay, together with his attempt to coerce an additional $5,000 from Moana, that Pagofie did not intend to carry out his end of the bargain. Pagofie's breach was substantial enough to defeat the purpose of the contract entitling Moana at that point to rescind the contract and recover his damages. Moana's compensatory damages are $5,900, the amount of the downpayment plus the amount of the first installment and survey cost payment.

■ Fraud is suggested by Pagofie's foot-dragging and improper attempt to increase the purchase price after the agreement was formulated. However, we are not persuaded that Pagofie harbored actual intent to defraud when the contract was entered. He was, at least, eager to take advantage of an opportunity to have in hand a substantial sum of money, even though he was not prepared to perform his side of the bargain in any reasonably expeditious manner. It appears that later on he thought that Moana had access to and could be readily manipulated to pay additional funds. His misconduct in handling this transaction was deliberate and certainly reprehensible, and warrants assessment of $1,500 as exemplary damages.

### Order

Pagofie shall pay Moana $5,900 in compensatory damages for Pagofie's breach of the land purchase contract between Pagofie and Moana and $1,500 as exemplary damages, a total of $7,400, plus Moana's costs incurred in this action. The total amount of the judgment, including costs, shall bear interest at the rate of 6% per annum until the judgment is paid in full.

It is so ordered.