804 S.E.2d 282

**ANDERSON COUNTY, Appellant,**

v.

**Joey PRESTON and the South Carolina Retirement System, Respondents.**

**Appellate Case No. 2013-002499**
**Opinion No. 5490**
Court of Appeals of South Carolina.
Heard June 11, 2015
Filed May 31, 2017
Withdrawn, Substituted and Refiled August 16, 2017

548

550

552

James Theodore Gentry, Troy A. Tessier, and Wade Stackhouse Kolb, III, of Greenville, and Alice Witherspoon Parham Casey, of Columbia, all of Wyche Law Firm, for Appellant.

Candy M. Kern-Fuller, of Upstate Law Group, LLC, of Easley, and Lane Whittaker Davis, of Nelson Mullins Riley &

Scarborough, LLP, of Greenville, for Respondent Joey Preston.

Justin Richard Werner, of Columbia, for Respondent South Carolina Retirement System.

WILLIAMS, J.:

On November 18, 2008, the Anderson County Council (the 2008 Council) voted to approve a severance agreement (the Severance Agreement) for outgoing county administrator Joey Preston. Anderson County (the County) filed the instant action against Preston seeking rescission of that agreement. Following a nonjury trial, the circuit court entered judgment in favor of Preston on all causes of action as well as his counterclaim against the County. The County appeals the circuit court's decision, raising numerous issues on appeal. We affirm in part and reverse in part.

**FACTS/PROCEDURAL HISTORY**

Prior to the vote on Preston's Severance Agreement, the political environment in Anderson County was "toxic." [1] Throughout his tenure, Preston was involved in constant litigation—both individually and in his capacity as county administrator—with members of the council he served.

The 2008 Council was comprised of Chairman Michael Thompson and Council members Larry Greer, Ron Wilson, Gracie Floyd, Robert Waldrep, Cindy Wilson, and Bill McAbee. In June 2008, primary challengers ousted three incumbent members of the 2008 Council: Tommy Dunn defeated Thompson, Tom Allen defeated McAbee, and Eddie Moore defeated Greer. Some of the primary victors, as well as Waldrep and Cindy Wilson, ran on platforms calling for examination into and possible reform of the financial and governance practices of the Preston administration.

From June to December 2008, Waldrep and Cindy Wilson held a series of meetings with Moore, Dunn, and Allen at Waldrep's office. During these meetings, the participants laid

---

1. While the circuit court cited numerous examples of troublesome behavior that reflected the "leadership wasteland" existing in Anderson County, we focus only on the events relevant to resolving the issues on appeal.

out an agenda for the incoming Council (the 2009 Council) that included firing the law firm for the County and hiring a new one; hiring a financial investigator or auditor; designating Moore as chairman; drafting resolutions for the first meeting; implementing a hiring freeze; and addressing the position of county administrator and various other personnel matters.

After the primary elections, Preston retained Robert Hoskins as his attorney. On September 25, 2008, Hoskins notified the 2008 Council of Preston's anticipatory breach of contract claim, stating the following:

> [I]t has come to Mr. Preston's attention that certain existing Council members have made statements that they and certain newly elected Council Members intend, after January 2009, to prevent him from carrying out his duties as County Administrator.... Preston considers the intent of certain members of Council and their allies to prevent him from performing his job as an anticipatory breach of his employment contract.... [T]he political and personal agenda of the obstructionists has rendered his ability to serve the people of Anderson County beyond January 1, 2009 impossible.

In response, the 2008 Council referred Preston's claim to its personnel committee—chaired by Ron Wilson—and hired Tom Bright, an employment attorney, to advise the County on the matter. Bright then interviewed all seven members of the 2008 Council, as well as the county attorney, to receive their input.

On October 23, 2008, Preston's attorney delivered a letter to Bright, in which he alluded to a number of causes of action and tort claims Preston planned to assert against current and incoming Council members. In the letter, however, he offered to settle Preston's anticipatory breach claim and "all claims against the County and the two individual Council [m]embers [he] previously mentioned." Under this proposed settlement, Preston would resign and execute a complete release of all claims against the County, Waldrep, and Cindy Wilson in exchange for the County paying $1,276,081 in damages: $827,222 for the total amount of pay and benefits due under his employment agreement[2] (the Employment Agreement);

---

**2.** In July 1998, Preston—who had served as county administrator since 1996—entered into an Employment Agreement with the County that

$356,087 to the South Carolina Retirement System (SCRS) to purchase seven years, seven months, and twenty-three days of service credits to allow him to retire immediately with a full pension; and $92,772 to his health reimbursement account for retiree health benefits.

After receiving the letter, Bright met with the personnel committee to discuss how the County should address the matter. In his notes outlining Preston's claims and the County's options, Bright stated Preston had no anticipatory breach or constructive discharge claim. Bright also advised the committee that, under our supreme court's ruling in *Piedmont Public Service District v. Cowart* (*Cowart II*), 324 S.C. 239, 478 S.E.2d 836 (1996), the County had a good argument that Preston's Employment Agreement was voidable—and therefore, had no value—because it purported to extend his employment beyond the term of the Council that approved it. Nevertheless, Bright also told the committee if the County were to lose, then it could face up to $2 million in litigation costs going forward. Thus, Bright advised the 2008 Council it could (1) do nothing, (2) leave the issue for the 2009 Council to decide, (3) terminate Preston and pay him nothing, or (4) settle with Preston and pay out his contract. As to the fourth option, Bright cautioned that "[c]itizens may go after Preston and former Council members for giving away their [money] without good reason" if the 2008 Council chose to settle. After considering the options, the personnel committee directed Bright "to go and talk to Mr. Hoskins and try and get the best deal you can."

Following several weeks of negotiations, Bright emailed Hoskins a copy of a proposed severance agreement and release of all claims on November 18, 2008. That evening, the 2008 Council voted to amend the agenda to consider the Severance Agreement, voted for its approval, voted to approve budget transfers to fund it, and then voted to reapprove it on reconsideration. The 2008 Council approved the Severance Agreement, and the budget transfers to fund it, by a 5–2 vote. After the votes, the 2008 Council voted to hire Michael Cun-

---

granted him an initial three-year term and allowed for one-year renewals at the end of each contract year.

ningham as the new county administrator and adjourned without conducting any further business.

Pursuant to the terms of the Severance Agreement, Preston agreed to resign as county administrator on November 30, 2008, and release all claims against the County and any of its Council members regarding his employment. In exchange, Preston received $1,139,833—less state and federal withholdings—from the County. The County also contributed $359,258 to the SCRS "to pay for retirement service credits," paid Preston $780,575 "in the form of a severance benefit," and gave Preston title to the 2006 GMC Yukon he was using as a County vehicle.

The newly constituted 2009 Council held its first meeting on January 6, 2009, during which it voted to hire a new law firm and a financial investigator to review Cunningham's employment contract, investigate the manner in which he was hired, and review the actions taken by the 2008 Council on November 18, 2008.[3]

Thereafter, the County sued Preston, alleging causes of action for (1) violation of the State Ethics Act,[4] section 2-37(g) of the Anderson County Code of Ordinances (the County Code), and the common law; (2) violation of public policy; (3) breach of fiduciary duty; (4) fraud; (5) constructive fraud; (6) negligent misrepresentation; (7) capriciousness, unreasonableness, and fraud; (8) fundamental and substantial breach of the Severance Agreement; (9) breach of fiduciary duties relating to back-dated documents; (10) constructive trust; and (11) unjust enrichment. The County later amended its complaint to

---

3. In *Bradshaw v. Anderson County,* our supreme court held South Carolina Code section 4-9-660 (1986) of the Home Rule Act expressly authorized the 2009 Council—operating under a council–administrator form of government—to directly engage professionals "for the purpose of inquiries and investigations." 388 S.C. 257, 263, 695 S.E.2d 842, 845 (2010). The court found the 2009 Council had the authority to investigate the 2008 Council's business and financial practices, "especially concerning contracts related to the former and current County Administrators." *Id.* at 258, 695 S.E.2d at 842. According to the court, it would be absurd to require the county administrator, "who is answerable to the council and not the electorate, to investigate himself." *Id.* at 263, 695 S.E.2d at 845.

4. S.C. Code Ann. §§ 8-13-100 through -1520 (Supp. 2016).

include additional factual allegations. Preston filed his answer to the amended complaint, asserting counterclaims against the County and SCRS.[5] The County then filed a reply to Preston's counterclaims.

On December 12, 2011, the case was designated as complex and assigned for all purposes to the Honorable Roger L. Couch. After hearing arguments, the circuit court denied the parties' cross-motions for summary judgment in all respects on October 23, 2012. As to Preston and the County, the court found summary judgment was inappropriate because genuine issues of material fact existed regarding the claims and counterclaims asserted. The matter was tried without a jury from October 29, 2012, to November 5, 2012. In its May 3, 2013 order (the Final Order), the court granted judgment in favor of Preston on all causes of action as well as his counterclaim against the County.

In the Final Order, the circuit court disqualified four 2008 Council members for improperly participating in the votes approving the Severance Agreement. The court found Thompson voted in violation of section 2-37(g)(4)(e) of the County Code because he was seeking future employment from the County through Preston at the time of the vote. The court likewise found Ron Wilson's vote violated subsections 2-37(g)(4)(a) and (e) because Ron Wilson's daughter had recently received a substantial financial benefit from Preston after he extended her personal services contract with the County. Although Waldrep and Cindy Wilson voted against the Severance Agreement, the court found their votes violated section 2-37(g) because both had a "financial interest greater than that of the general Anderson County public" and their participation created "a substantial appearance of impropriety." Given that "Preston agreed not to pursue any further claims against any County Council member," the court found Waldrep and Cindy Wilson "had a direct economic interest"—regardless of the

---

**5.** SCRS asserted cross-claims against Preston in its answer to the County's amended complaint. While the circuit court retained SCRS as a party—finding the extent of its liability was a question of fact—the court excused SCRS from appearing with the parties' consent. The parties also settled Preston's false arrest and abuse of process counterclaims and stipulated to their dismissal prior to trial.

vote's outcome—and should not have participated while he maintained a lawsuit against them individually.

After disqualifying four of the seven members, the court—relying upon *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999), and section 2-37(g)(3) of the County Code—nevertheless found "a majority of those present and properly voting approved Preston's Severance Agreement." The court also held, *inter alia*, (1) public policy neither rendered the Severance Agreement nor the vote adopting it void; (2) Preston did not breach a fiduciary duty because he owed no duty to disclose Council members' personal conflicts of interest; (3) the County failed to prove its claims for fraud, constructive fraud, and negligent misrepresentation; (4) the 2008 Council's approval of the Severance Agreement was neither unreasonable or capricious nor was it a product of fraud and abuse of power; (5) the County's constructive trust claim no longer remained viable; (6) rescission was unavailable as a remedy; (7) the County had unclean hands; (8) adequate remedies at law barred the County from invoking the court's equitable jurisdiction; (9) the County breached the covenant not to sue in the Severance Agreement by bringing this lawsuit; and (10) the issue concerning the award of attorney's fees should be held in abeyance pending the final disposition and the filing of a petition.

In light of the circuit court's Final Order, the County filed a motion to alter or amend the judgment as well as a motion to amend its complaint. Preston filed an answer, and the County submitted a reply. Richard Freemantle, a third party, filed a post-trial motion to intervene. The circuit court, however, denied all of the parties' post-trial motions in an order (the Post-Trial Order) dated November 8, 2013. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in concluding Preston owed no fiduciary duty to inform the County of improper votes and finding his conduct did not constitute fraud, constructive fraud, or negligent misrepresentation?

II. Did the circuit court err in finding a single tainted vote did not require invalidation of the Severance Agreement's approval or mandate its rescission?

III. Did the circuit court err in refusing to invalidate the 2008 Council's approval of the Severance Agreement based upon the absence of a quorum?

IV. Did the circuit court err in holding future payments from SCRS to Preston were not available in fashioning a remedy?

V. Did the circuit court err in holding rescission was an unavailable remedy?

VI. Did the circuit court err in finding the County acted with unclean hands?

VII. Did the circuit court err in concluding the County could not invoke its equitable powers because an adequate remedy at law existed?

VIII. Did the circuit court err in holding the County breached the terms of the Severance Agreement by bringing the instant lawsuit?

## STANDARD OF REVIEW

Because the County's main purpose in bringing the instant lawsuit was to rescind the Severance Agreement, this action is equitable in nature. *See ZAN, LLC v. Ripley Cove, LLC*, 406 S.C. 404, 412, 751 S.E.2d 664, 669 (Ct. App. 2013) (per curiam). In an equitable action, this court reviews factual findings and legal conclusions de novo. *Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 248, 715 S.E.2d 348, 352 (Ct. App. 2011). "Therefore, we may find facts according to our own view of the preponderance of the evidence." *Ballard v. Roberson*, 399 S.C. 588, 593, 733 S.E.2d 107, 109 (2012). Moreover, we are free to decide "question[s] of law with no particular deference to the circuit court." *Catawba Indian Tribe of S.C. v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007). Our de novo review, however, does not require this court to disregard the circuit court's findings or "ignore the fact that the [circuit] court is in the better position to assess the credibility of the witnesses." *Ripley Cove*, 406 S.C. at 412, 751 S.E.2d at 669 (quoting *Nutt Corp. v. Howell Rd., LLC*, 396 S.C. 323, 327, 721 S.E.2d 447, 449 (Ct. App. 2011)). Further, this broad scope of review does not relieve the appellant of the burden of demonstrating the circuit court erred in its findings. *Ballard*, 399 S.C. at 593, 733 S.E.2d at 109.

## LAW/ANALYSIS

### I. Preston's Knowledge of Conflicts of Interest

First, the County contends the circuit court erred in finding Preston's failure to inform the 2008 Council of Thompson and Ron Wilson's conflicts of interest prior to the Severance Agreement's approval did not constitute a breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation.

#### A. Breach of Fiduciary Duty

■ The County argues Preston—in his capacity as county administrator—owed the highest duty of loyalty and breached this duty by knowingly allowing Thompson and Ron Wilson to introduce, debate, preside over, and cast improper votes in favor of his Severance Agreement. According to the County, Preston had a duty to make these conflicts of interest known because he was still employed as county administrator when he attended the vote affecting his own interest. We disagree.

■ "To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012).

■ "A fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Moore v. Moore*, 360 S.C. 241, 250, 599 S.E.2d 467, 472 (Ct. App. 2004). "To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will not act in [its] own behalf but in the interest of the party so reposing." *Id.* at 251, 599 S.E.2d at 472. "The evidence must show the entrusted party actually accepted or induced the confidence placed in [it]." *Id.*

In the instant case, the circuit court held Preston owed no fiduciary duty to disclose information about his employment claims to the 2008 Council because Preston and the County

had assumed adverse positions by October and November of 2008.

Although Preston owed the County a fiduciary duty throughout his employment as county administrator,[6] in this particular context, the County had no foundation for believing Preston would not act in his own interest to achieve the best possible settlement of his claims against the County. *See generally Moore*, 360 S.C. at 251, 599 S.E.2d at 472 (explaining that, for a plaintiff "[t]o establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will not act in [its] own behalf but in the interest of the party so reposing"). The parties clearly had opposing interests throughout settlement negotiations and remained adverse to one another during the 2008 Council's vote on the Severance Agreement. Moreover, in preparation of litigation, the County and Preston each retained attorneys to represent their respective interests. In light of these facts and circumstances, we are unable to find any basis upon which the County could have reasonably believed Preston would act on its behalf—instead of representing his own interests—while trying to settle his employment claims against the County. Because the parties were directly adverse to one another, we hold Preston owed no duty to disclose Thompson and Ron Wilson's conflicts of interest during the vote on his Severance Agreement. *See id.*; *see also Boaz v. Boaz*, 221 S.W.3d 126, 133 (Tex. App. 2006) ("[A]dverse parties who have retained professional counsel ... do not owe fiduciary duties to one another.").

Our holding is further supported by the State Ethics Act[7]

---

**6.** *See, e.g., Young v. McKelvey*, 286 S.C. 119, 122, 333 S.E.2d 566, 567 (1985) ("It is implicit in any contract for employment that the employee shall remain faithful to the employer's interest throughout the term of employment. An employee has a duty of fidelity to his employer." (quoting *Berry v. Goodyear Tire & Rubber Co.*, 270 S.C. 489, 491, 242 S.E.2d 551, 552 (1978))).

**7.** *See, e.g.,* Act No. 248, 1991 S.C. Acts 1616–17 ("No public official, public member, or public employee may make, participate in making, or in any way attempt to use his office, membership, or employment to influence a governmental decision in which he, a member of his immediate family, an individual with whom he is associated, or a

and the County Code,[8] neither of which give Preston a legal duty to disclose Council members' conflicts of interest. To the contrary, the relevant provisions imposed only a positive legal duty on Council members—not the county administrator—to disclose their own personal conflicts and abstain from voting if necessary. Further, when questions on conflicts of interests did arise, the County Code instructed members to seek guidance from the county attorney, not the county administrator. *See* Anderson County, S.C., Code of Ordinances § 2-289 (2000) (providing when an official "has doubt as to the applicability of a provision of [the ethics] division to a specific situation or definition of terms used in the Code, he shall apply to the county attorney for an advisory opinion and be guided by that opinion when given").

Based on the foregoing, we affirm the circuit court's finding that Preston owed no fiduciary duty to disclose Thompson and

---

business with which he is associated has an economic interest." (current version at S.C. Code Ann. § 8-13-700(B) (Supp. 2016)).

**8.** *See, e.g.,* Anderson County, S.C., Code of Ordinances § 2-288(a)(6) (2000) ("A councilmember who has a financial or other private interest in any legislation shall disclose on the records of the county council the nature and extent of such interest.... A councilmember shall disqualify himself from voting if the matter under consideration involves his personal or financial interest to the extent such interest conflicts with his official duties and would impair his independence or judgment."); § 2-37(g)(4) ("No member [of Council] shall vote on any matter in which he/she has a personal or financial interest greater than that of the general Anderson County public, or in which he/she is otherwise disqualified by any state or county law or regulation. Each member shall make known, in the manner required by law, any such disqualifying interest and refrain from voting upon or otherwise participating, in his capacity as a county officer, in matters related thereto."). Subsection 2-37(g)(4) further provides, in relevant part, that a "member shall be deemed to have a personal or financial interest" in the following situations: the member "has such an interest individually or if any member of his/her immediate family (i.e. brother, sister, direct ancestor or direct descendant) has such an interest;" the member "has a substantial financial interest in any business which contracts with the county for sale or lease of land, materials, supplies, equipment or services or personally engages in such matter;" the member "is so deemed by any state law or regulation;" or the member "cannot, for any other reason, render a fair, unbiased and impartial judgment in the matter, or his/her participation in the matter at hand would create a substantial appearance of impropriety."

Ron Wilson's conflicts of interest during the 2008 Council's vote on his Severance Agreement.

## B. Fraud, Constructive Fraud, and Negligent Misrepresentation

 The County further contends Preston's failure to disclose the facts that rendered Thompson and Ron Wilson's votes improper amounted to fraud, constructive fraud, and negligent misrepresentation. We disagree.

 "Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to [that person] or to surrender a legal right." *Regions Bank v. Schmauch*, 354 S.C. 648, 672, 582 S.E.2d 432, 444 (Ct. App. 2003). To establish fraud, a plaintiff must prove the following elements by clear, cogent, and convincing evidence:

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Moseley v. All Things Possible, Inc.*, 388 S.C. 31, 35–36, 694 S.E.2d 43, 45 (Ct. App. 2010) (quoting *Schmauch*, 354 S.C. at 672, 582 S.E.2d at 444–45). "Failure to prove any element of fraud is fatal to the action." *Robertson v. First Union Nat'l Bank*, 350 S.C. 339, 348, 565 S.E.2d 309, 314 (Ct. App. 2002).

 "Parties in a fiduciary relationship must fully disclose to each other all known information that is significant and material, and when this duty to disclose is triggered, silence may constitute fraud." *Moore*, 360 S.C. at 251, 599 S.E.2d at 472 (quoting *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 101, 594 S.E.2d 485, 497 (Ct. App. 2004)). Nondisclosure is fraudulent when a party has a duty to speak. *Schmauch*, 354 S.C. at 673, 582 S.E.2d at 445.

> The duty to disclose may be reduced to three distinct classes: (1) whe[n] it arises from a preexisting definite fiduciary relation between the parties; (2) whe[n] one party expressly reposes a trust and confidence in the other with

reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; [and] (3) whe[n] the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Id.* at 673–74, 582 S.E.2d at 445–46 (quoting *Jacobson v. Yaschik*, 249 S.C. 577, 585, 155 S.E.2d 601, 605 (1967)).

 "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Woods v. State*, 314 S.C. 501, 505, 431 S.E.2d 260, 263 (Ct. App. 1993) (quoting *Giles v. Lanford & Gibson, Inc.*, 285 S.C. 285, 288, 328 S.E.2d 916, 918 (Ct. App. 1985)). "To establish constructive fraud[,] all elements of actual fraud except the element of intent must be established." *Id.* at 506, 431 S.E.2d at 263. "Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." *Id.* at 505, 431 S.E.2d at 263 (quoting *Giles*, 285 S.C. at 288, 328 S.E.2d at 918).

 When no confidential or fiduciary relationship exists, "and an arm's length transaction between mature, educated people is involved," a party has no right to rely on the other's representations. *Ardis v. Cox*, 314 S.C. 512, 516, 431 S.E.2d 267, 270 (Ct. App. 1993). "This is especially true in circumstances whe[n] one should have utilized precaution and protection to safeguard his interests." *Id.* at 516–17, 431 S.E.2d at 270.

 In a negligent misrepresentation action, a plaintiff must prove six elements:

(1) the defendant made a false representation to the plaintiff, (2) the defendant had a pecuniary interest in making the statement, (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff, (4) the defendant breached that duty by failing to exercise due care, (5) the plaintiff justifiably relied on the represen-

tation, and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*Brown v. Stewart*, 348 S.C. 33, 42, 557 S.E.2d 676, 680–81 (Ct. App. 2001). "Thus, a key difference between fraud and negligent misrepresentation is that fraud requires the conveyance of a known falsity, while negligent misrepresentation is predicated upon transmission of a negligently made false statement." *Id.* at 42, 557 S.E.2d at 681.

In the instant case, we find the circuit court properly determined the County failed to meet its burden of proving the claims for fraud, constructive fraud, and negligent representation. Because the Severance Agreement's negotiation constituted "an arm's length transaction between mature, educated people"—all of whom were represented by counsel—we hold the County had no right to rely upon any false representations allegedly made by Preston. *See Ardis*, 314 S.C. at 516, 431 S.E.2d at 270. Preston also had no fiduciary duty to disclose Council members' conflicts of interest, and thus, his silence did not constitute fraud. *Cf. Moore*, 360 S.C. at 251, 599 S.E.2d at 472; *Schmauch*, 354 S.C. at 673, 582 S.E.2d at 445. As noted above, the elected officials—not Preston—owed positive legal duties to disclose their own personal conflicts of interest and disqualify themselves from voting under both the County Code and the State Ethics Act. Moreover, our courts have repeatedly recognized the general rule that fraud cannot be predicated on misrepresentations as to matters of law, much less mere mistakes of law. *See First Nat'l Bank of Greenville v. U.S. Fid. & Guar. Co.*, 207 S.C. 15, 30, 35 S.E.2d 47, 59 (1945); *Barber v. Barber*, 291 S.C. 399, 400, 353 S.E.2d 882, 883 (Ct. App. 1987). Given that the parties were clearly in adversarial positions at the time of the vote, the County had no basis for believing Preston owed it a legal duty to disclose information adverse to his claim, nor did it have a right to rely upon Preston's representations.

Based on the foregoing, we affirm the circuit court's finding that Preston's silence during the November 18, 2008 meeting did not constitute fraud, constructive fraud, or negligent misrepresentation. *See Robertson*, 350 S.C. at 348, 565 S.E.2d at 314 (noting that "[f]ailure to prove any element of fraud is fatal to the action"); *Woods*, 314 S.C. at 506, 431 S.E.2d at 263 (noting that, to prove constructive fraud, "all elements of

actual fraud except the element of intent must be established"); *Stewart*, 348 S.C. at 42, 557 S.E.2d at 680–81 (requiring that, to establish negligent misrepresentation, a plaintiff must have "justifiably relied on the representation").

## II. Tainted Votes

 The County further contends the circuit court erred in finding a single tainted vote did not require invalidation of the 2008 Council's approval of the Severance Agreement or mandate its rescission. We disagree.

The County does not advocate for a general rule that would require South Carolina courts to overturn legislation due to a single tainted vote; rather, the County argues courts should apply the single tainted vote rule in rare cases involving egregious circumstances. Specifically, the County contends Ron Wilson and Thompson's tainted votes required invalidation of the 2008 Council's approval of the Severance Agreement in the instant case because the following extraordinary factors were present: (1) the agreement conferred a private benefit on one individual and was not a law of general application; (2) the agreement was passed by a "simple motion," rather than in the form of an ordinance that would require public notice and three readings; (3) the process by which the agreement was passed involved procedural irregularities; (4) members failed to disclose conflicts of interest; (5) the motion was presented by a member with a conflict of interest; and (6) approval of the agreement was not subject to the normal process of political redress.

The County relies upon several cases from other jurisdictions to support its proposed application of the single tainted vote rule. *See, e.g., Dowling Realty v. City of Shawnee*, 32 Kan.App.2d 536, 85 P.3d 716, 721–22 (2004) (remanding the case to the trial court with directions to send it back to the city planning commission because a local government officer, who advocated approval of his project to "the governmental body of which he ... [was] a member without identifying himself ... as having a substantial interest in the project," acted in violation of Kansas ethics rules); *Appeal of City of Keene*, 141 N.H. 797, 693 A.2d 412, 415–16 (1997) (voiding the county commissioners' denial of the city's request for a deter-

mination of public necessity on the grounds that a judicial action by a tribunal is voidable when a member is disqualified but still participates, regardless of whether the disqualified member's vote produces the outcome); *Thompson v. City of Atlantic City*, 190 N.J. 359, 921 A.2d 427, 430–43 (2007) (voiding a settlement agreement between the mayor and the city as contrary to public policy based upon the involvement of several parties with conflicts of interest).

While we recognize courts in other jurisdictions have invalidated governmental actions based upon a single tainted vote, we are unable to find any South Carolina authority to support this court taking such an extraordinary action. In fact, our precedent suggests South Carolina does not follow the single tainted vote rule. In *Baird*, our supreme court considered whether a court has jurisdiction to invalidate an ordinance based upon tainted votes. 333 S.C. at 535, 511 S.E.2d at 77–78. There, a group of doctors sued Charleston County, arguing a bond ordinance was invalid because a county council member with a conflict of interest voted on the matter in violation of the State Ethics Act. *Id.* at 535, 511 S.E.2d at 77. In determining whether invalidating the bond ordinance was an appropriate remedy for a State Ethics Act violation, the court found the following:

[T]he vote of a council member who is disqualified because of interest or bias in regard to the subject matter being considered may not be counted in determining the necessary majority for valid action. Therefore, a court has jurisdiction to invalidate an ordinance if the requisite number of votes to pass the ordinance would not exist but for the improper vote.

*Id.* at 535, 511 S.E.2d at 77–78 (citation omitted).

We read the second sentence in the above quote from *Baird* to also stand for the proposition that a court does *not* have jurisdiction to invalidate an ordinance if, after excluding the improper vote, the requisite number of votes to pass the ordinance still exists. Because *Baird* indicates we do not follow the single tainted vote rule in South Carolina, we find the circuit court properly declined the County's invitation to apply it in the instant case. Accordingly, we affirm the court's finding that one tainted vote did not require invalidation of the

2008 Council's approval of the Severance Agreement or mandate its rescission.

## III. Absence of a Quorum

Next, the County argues the circuit court erred in finding its quorum argument was not preserved, and in addressing the merits of the claim, ruling a quorum existed—despite the invalidation of four votes—because the Severance Agreement was passed by a majority of those Council members present and voting. We agree.

As a preliminary matter, we must determine whether the County properly raised the quorum argument below such that it is preserved for appellate review. "A post-trial motion must be made when the [circuit] court either grants relief not requested or rules on an issue not raised at trial." *Fryer v. S.C. Law Enf't Div.*, 369 S.C. 395, 399, 631 S.E.2d 918, 920 (Ct. App. 2006); *see also* J. TOAL, A. WALKER & M. BAKER, APPELLATE PROCEDURE IN SOUTH CAROLINA 189 (3d ed. 2016) ("Post-trial motions are . . . utilized to raise issues that could not have been raised at trial.").

After entry of the Final Order, the County filed a motion to reconsider, arguing the circuit court's "invalidation of four total votes mean[t] there was no quorum for the vote on [the Severance Agreement], rendering the vote void." In the Post-Trial Order, the court found the quorum issue was not preserved because the County failed to present the issue to the court, despite having ample opportunity to raise it.

Unlike the circuit court, we find the prospect of a quorum being destructed did not exist until the court invalidated four Council members' votes in the Final Order, and in doing so, granted relief that was not requested by either party. Neither the County nor Preston presented an argument prior to or during trial that would have resulted in four votes being invalidated. The County repeatedly argued in favor of invalidating the votes of Thompson, Ron Wilson, and McAbee. Nevertheless, invalidating three votes would not have destroyed the quorum.

At trial, the circuit court noted the issue of whether Cindy Wilson and Waldrep had conflicts of interest "has come up as an allegation" and stated as follows:

I didn't remember this being alleged or discussed during our pretrial motion period, that the two votes I want to say that weren't in favor because one time it was an abstention and one time it was a vote against, should also not count because they had a dog in the fight. I don't know whether that's ple[aded]. I don't know if it[ ] just wasn't argued. It's come up as an argument now, and I ... went over the pleadings before we started, and I started off with hearings going over those, and I don't recall that being something that was ple[aded], but maybe it has been. I don't know. So, I'm [going to] ask you about that, and I'll give you a chance to tell me about your side of it in just a minute, Mr. Davis.

The court, however, never ruled at trial on whether Cindy Wilson or Waldrep's votes were invalid based upon their conflicts of interest. The court did not find Cindy Wilson and Waldrep were disqualified from voting due to conflicts of interest until it issued the Final Order. Therefore, once the court decided to invalidate Thompson and Ron Wilson's votes, along with Cindy Wilson and Waldrep's votes, the quorum issue arose.

Because the argument regarding Cindy Wilson and Waldrep's votes was not raised prior to trial or ruled upon during trial—and the County argued only for the disqualification of Thompson, Ron Wilson, and McAbee—we find the question of whether a quorum existed first arose when the circuit court invalidated the votes of four Council members due to conflicts of interest in the Final Order. Accordingly, we hold the County's Rule 59(e) motion was the proper means by which to raise the argument that the Severance Agreement should be invalidated because the 2008 Council passed it in the absence of a quorum. *See Fryer*, 369 S.C. at 399, 631 S.E.2d at 920; TOAL ET AL., *supra*, at 189. Further, while the circuit court initially found the quorum issue was not preserved, we note the court also addressed the merits of the parties' quorum arguments in the alternative. Based on the foregoing, we find the County's argument is preserved for appellate review because it was properly raised to and ruled upon by the circuit court.

Turning to the merits, the County argues the circuit court erred in finding the 2008 Council's approval of the Severance Agreement was valid because—contrary to the court's find-

ings—the disqualification of four Council members destroyed the quorum necessary for conducting valid business. We agree.

In the Post-Trial Order, the circuit court found a quorum was present and the vote was valid for the following reasons: (1) a quorum is determined based on a person's presence at the meeting, not on voting ability; (2) "the County's Code did not require a majority of Council to vote on an issue to be a valid vote, but rather a majority of those present and voting to carry the question"; (3) "the County's prior interpretation and usage under its own Code ... allowed votes to be taken despite the disqualification of certain members, so long as present at the meeting site"; and (4) "the County Code expressly incorporated [the Freedom of Information Act [9]] and the State Ethics Act—both of which define quorum without reference to voting disqualifications—into County meeting procedures."

Section 2-37(g)(3) of the County Code provides, "Except where otherwise specified in these rules, a majority vote of those members present and voting shall decide all questions, motions, and other votes." Section 2-37(d) defines a quorum as follows:

> A quorum shall consist of a majority of the council. In the absence of a quorum, the meeting cannot be convened. Should sufficient members leave during a meeting, the chairperson shall immediately declare a recess and attempt to obtain a quorum. If, after a reasonable time, a quorum has not been obtained, the meeting shall be adjourned. Members of county council may excuse themselves briefly during a meeting without loss of a quorum; however, no vote may be taken during the temporary absence of quorum.

In the instant case, the circuit court invalidated four of the Council member's votes. The County Code, however, provides no guidance for situations in which a vote is invalidated due to a member's conflict of interest. For issues of parliamentary procedure not addressed in the County Code, it provides as follows:

---

9. S.C. Code Ann. §§ 30-4-10 through -165 (2007 & Supp. 2016).

> In all particulars not determined by these rules, or by law, the chairperson or other presiding officer shall be guided by the previous usage of county council or by parliamentary law and procedure as it may be collected from Roberts [sic] Rules of Order, latest edition.

Anderson County, S.C., Code of Ordinances § 2-37(g)(12) (2000).

The County Code states the Council may not take a vote during the temporary absence of a quorum, but it does not specifically address what happens when such a vote is taken. Therefore, we look to *Robert's Rules of Order*, which provides, "In the absence of a quorum, any business transacted ... is null and void." HENRY M. ROBERT ET AL., ROBERT'S RULES OF ORDER § 40, at 347 (11th ed. 2013).

Although *Robert's Rules of Order* renders any business transacted in the absence of a quorum null and void, it does not address the effect of an invalidated vote on the calculation of a quorum. Nevertheless, South Carolina courts have repeatedly addressed this issue as it relates to various governing bodies. In *Garris v. Governing Board of South Carolina Reinsurance Facility*, for example, our supreme court considered the effect of a disqualified vote in a corporate context and stated the following:

> In the absence of any statutory or other controlling provision, the common-law rule that a majority of a whole board is necessary to constitute a quorum applies, and the board may do no valid act in the absence of a quorum. A member who recuses himself or is disqualified to participate in a matter due to a conflict of interest, bias, or other good cause may not be counted for purposes of a quorum at the meeting where the board acts upon the matter.

333 S.C. 432, 453, 511 S.E.2d 48, 59 (1998) (citations omitted).

Prior to *Garris*, our supreme court repeatedly stated the general rule that a corporation's director or board member with a personal interest in a corporate matter may not be "counted to make a quorum at a meeting where the matter is acted upon." *See Talbot v. James*, 259 S.C. 73, 82, 190 S.E.2d 759, 764 (1972); *Gilbert v. McLeod Infirmary*, 219 S.C. 174, 186, 64 S.E.2d 524, 529 (1951); *Fid. Fire Ins. Co. v. Harby*, 156

S.C. 238, 246–47, 153 S.E. 141, 144 (1930); *Peurifoy v. Loyal*, 154 S.C. 267, 288, 151 S.E. 579, 586 (1930).

Likewise, in *Baird*, our supreme court addressed the effect of a disqualified vote in the context of a county council vote. 333 S.C. at 535, 511 S.E.2d at 77–78. Specifically, the *Baird* court considered the issue of "whether invalidation of a bond ordinance [was] a proper remedy for a violation of the State Ethics Act." *Id.* at 535, 511 S.E.2d at 77. As previously noted, the court stated "the vote of a council member who is disqualified because of interest or bias in regard to the subject matter being considered may not be counted in determining *the necessary majority for valid action.*" *Id.* (emphasis added). *Robert's Rules of Order* defines a quorum as "[t]he minimum number of members who must be present at the meetings of a deliberative assembly *for business to be validly transacted.*" ROBERT ET AL., *supra*, § 3, at 21 (emphasis added). When read in conjunction with the definition of a quorum in *Robert's Rules of Order*, we interpret the court's language in *Baird* to mean a council member who is disqualified due to a conflict of interest may not be counted toward a quorum.

■ Based upon our review of the relevant authority, we find a council member who has a personal interest in a matter—and votes on the matter—is disqualified from the vote and may not be counted toward the quorum. Our position is supported by South Carolina precedent relating to both corporate boards and county councils. *See Baird*, 333 S.C. at 535, 511 S.E.2d at 77–78; *Talbot*, 259 S.C. at 82, 190 S.E.2d at 764; *Gilbert*, 219 S.C. at 186, 64 S.E.2d at 529; *Fid. Fire Ins. Co.*, 156 S.C. at 246–47, 153 S.E. at 144; *Peurifoy*, 154 S.C. at 288, 151 S.E. at 586.

Applying the rule to the facts of this case, we find the disqualification of Thompson, Ron Wilson, Waldrep, and Cindy Wilson—based upon their individual conflicts—required the court to remove them from its calculation of the quorum. Under the County Code and *Robert's Rules of Order*, a quorum—a majority of those members present and voting— was required for the Council to validly transact business. *See* Anderson County, S.C., Code of Ordinances § 2-37(d), (g)(3); ROBERT ET AL., *supra*, § 3, at 21; *see also Gaskin v. Jones*, 198 S.C. 508, 513, 18 S.E.2d 454, 456 (1942) ("'[A] majority of a

whole body is necessary to constitute a quorum ..., and no valid act can be done in the absence of a quorum."). After removing the improper votes, however, only three of the seven Council members could be counted toward the quorum. Given that four members must be present and voting to constitute a quorum, we find the Severance Agreement is null and void because the 2008 Council approved the agreement, as well as the motion to transfer monies to fund it, without the quorum necessary for taking valid action. Accordingly, we hold the circuit court erred in failing to remove the four disqualified members' votes from its quorum calculation.

Although some may argue this creates an impracticable framework, we note the 2008 Council had several procedural options at its disposal through which it could have passed the Severance Agreement in spite of a majority of Council having personal conflicts. For instance, members with conflicts could have *abstained* from voting, and their abstentions would have allowed them to be counted toward the quorum without tainting the entire vote. Unlike in the case of a recusal—in which a member physically leaves the room to avoid participation—when a member properly abstains, it does not have the effect of defeating a quorum because the member is still physically present. *See generally Gaskin*, 198 S.C. at 513–14, 18 S.E.2d at 456 ("If a quorum is present, a majority of a quorum is sufficient to act and bind the entire body. The members *who are present at a meeting cannot by a mere refusal to vote* defeat the action of the majority of those voting." (emphasis added) (citation omitted)). In this case, because four Council members were *disqualified*, those members are not counted for purposes of the quorum, and therefore, are treated as if they were not present at the meeting. *See Garris*, 333 S.C. at 453, 511 S.E.2d at 59 ("A member who recuses himself or is disqualified to participate in a matter due to a conflict of interest, bias, or other good cause may not be counted for purposes of a quorum at the meeting where the board acts upon the matter.").

Based on the foregoing, we hold all votes relating to the adoption and funding of the Severance Agreement are null and void because the 2008 Council passed these motions in the absence of a quorum. Therefore, we reverse the circuit court's holding regarding the quorum issue.

## IV. Availability of Future Payments from SCRS

The County contends the circuit court erred in declining to have Preston's monthly retirement benefit from SCRS placed in a constructive trust and redirected to the County. The circuit court did not reach the merits of this issue in the Final Order. Instead, the court held that, given its previous findings, the County's "cause of action for constructive trust no longer remain[ed] viable." In light of our holding in Part III, *supra*, we reverse.

## V. Rescission

■■■ The County contends the circuit court erred in finding rescission was unavailable because the parties cannot be returned to their status quo ante. We disagree.

■■■■ "Rescission is an equitable remedy that attempts to undo a contract from the beginning as if the contract had never existed." *Ripley Cove, LLC*, 406 S.C. at 413, 751 S.E.2d at 669 (quoting *Mortg. Elec. Sys., Inc. v. White*, 384 S.C. 606, 615, 682 S.E.2d 498, 502 (Ct. App. 2009)).

A contract may be rescinded for mistake, if justice so requires, in the following circumstances: (1) whe[n] the mistake is mutual and is in reference to the facts or supposed facts upon which the contract is based; (2) whe[n] the mistake is mutual and consists in the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with the true agreement of the parties; (3) whe[n] the mistake is unilateral and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to the rescission, without negligence on the part of the party claiming rescission; or (4) whe[n] the mistake is unilateral and is accompanied by very strong and extraordinary circumstances which would make it a wrong to enforce the agreement, sustained by competent evidence of the clearest kind.

*King v. Oxford*, 282 S.C. 307, 313, 318 S.E.2d 125, 128 (Ct. App. 1984). Nevertheless, as our supreme court has noted, "there can be no rescission of a nonexistent contract." *Davis v. Cordell*, 237 S.C. 88, 98, 115 S.E.2d 649, 654 (1960). A cause of action seeking rescission and damages assumes a valid con-

tract, whereas one attacking the contract as void assumes no contract existed. *Id.* at 98, 115 S.E.2d at 653–54.

"In the absence of fraud[,] which would justify shifting the loss to the party who opposes rescission, rescission is appropriate only if both parties can be returned to the status quo prior to the contract." *King*, 282 S.C. at 313, 318 S.E.2d at 129. "When a party elects and is granted rescission as a remedy, [the party] is entitled to be returned to status quo ante." *Miccichi*, 358 S.C. at 95, 594 S.E.2d at 494. "Rescission entitles the party to a return of the consideration paid as well as any additional sums necessary to restore [the party] to the position occupied prior to the making of the contract." *First Equity Inv. Corp. v. United Serv. Corp. of Anderson*, 299 S.C. 491, 496, 386 S.E.2d 245, 248 (1989). Because rescission returns the parties to the status quo ante, this necessarily requires any party damaged to be compensated. *Miccichi*, 358 S.C. at 95, 594 S.E.2d at 494.

In *Griggs v. E.I. DuPont de Nemours & Co.*, the U.S. Court of Appeals for the Fourth Circuit stated "the inability to compel full restoration of benefits received under the instrument to be rescinded does not automatically preclude the granting of equitable rescission." 385 F.3d 440, 452 (4th Cir. 2004). The court considered various authorities to determine whether a rescissionary remedy could be fashioned that would eliminate the prejudice stemming from one party's delay in seeking rescission. *Id.* at 452; *see also, e.g.*, *Henson v. James M. Barker Co.*, 555 So.2d 901, 909 (Fla. Dist. Ct. App. 1990) ("In the event restoration to the status quo is impossible, rescission may be granted if the court can balance the equities and fashion an appropriate remedy that would do equity to both parties and afford complete relief."); 24 Samuel Williston & Richard A. Lord, Williston on Contracts § 69:51 (4th ed. 2002) ("Where circumstances permit, some courts also have allowed as a substitute for restoration of the consideration a deduction of the amount of it from the recovery against the wrongdoer. This is the most practicable and satisfactory disposition of many cases."). After reviewing these authorities, the Fourth Circuit granted rescission based on the following reasoning:

Because Griggs's delay in seeking rescission has lessened the likelihood that he will be able to recover the tax

payments made on the lump-sum distribution, our remedy properly forces Griggs, not DuPont, to bear the risk that the tax payments will not be fully recovered. Under these circumstances, Griggs's delay in seeking rescission works no prejudice on DuPont, thus making it proper and equitable to grant rescission without requiring Griggs to make complete restoration of the benefits he received in connection with his initial lump-sum election. At the same time, because the relief we describe allows Griggs to rescind his lump-sum election and instead receive a monthly payment for life (albeit in a lesser amount), DuPont's breach of fiduciary duty does not go unremedied.

*Griggs*, 385 F.3d at 452–53 (footnote omitted).

In light of our invalidation of the Severance Agreement, we find rescission is an unavailable remedy because the contract never existed. *See Cordell*, 237 S.C. at 98, 115 S.E.2d at 654 (noting "there can be no rescission of a nonexistent contract"). We further find rescission inappropriate because the parties cannot be returned to their status quo ante. *See Miccichi*, 358 S.C. at 95, 594 S.E.2d at 494. Although the County would benefit from a return of the monies improperly allocated to fund the void Severance Agreement, Preston cannot be returned to the county administrator position and—at this stage—it is unclear what remedies, if any, he would be entitled to under his Employment Agreement because the circuit court has not ruled upon its validity.

The County relies upon *Griggs* and cites cases from other jurisdictions—as well as secondary sources—in support of its argument that "equity is not as straight-jacketed" as the circuit court suggested. *See, e.g., East Derry Fire Precinct v. Nadeau*, 155 N.H. 429, 924 A.2d 390, 393–94 (2007) (finding that, when a party was "an active participant in the scheme" to create a fraudulent severance agreement approved by commissioners at a meeting, rescission was appropriate even though it deprived the party of a severance he would have received anyway, based on later events, had he stayed on the job); 17B C.J.S. *Contracts* § 652 ("Complete restoration is not necessary if the party that is not fully restored was actually at fault."). We find these authorities distinguishable, however, because the record in the instant case does not support a finding that Preston engaged in fraudulent conduct, *see Na-*

*deau*, 924 A.2d at 393–94, breached a fiduciary duty, *see Griggs*, 385 F.3d at 453, or was at fault, *see* 17B C.J.S. *Contracts* § 652. Accordingly, we find the County failed to demonstrate why the facts and circumstances of this case justify this court employing an exception to fashion a remedy that does not fully return the parties to their status quo ante.

Based on the foregoing, we affirm the circuit court's finding that rescission is unavailable as a remedy in this case because the parties cannot be returned to their status quo ante.

## VI. Unclean Hands

The County further argues the circuit court erred in finding it acted with unclean hands in this matter and could not invoke the court's equitable powers to rescind the Severance Agreement. We agree.

A party with unclean hands is precluded from recovering in equity. *Anderson v. Buonforte*, 365 S.C. 482, 493, 617 S.E.2d 750, 756 (Ct. App. 2005). "A party will have unclean hands whe[n] the party behaves unfairly in a matter that is the subject of the litigation to the prejudice of the defendant." *Id.* (quoting *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107 n.2, 531 S.E.2d 287, 292 n.2 (2000)). "The expression 'clean hands' means a clean record with respect to the transaction with the defendants themselves and not with respect to others." *Arnold v. City of Spartanburg*, 201 S.C. 523, 532, 23 S.E.2d 735, 738 (1943). "[T]he rule must be understood to refer to some misconduct in regard to the matter in litigation of which the opposite party can, in good conscience, complain in a [c]ourt of equity." *Id.*

In the Final Order, the circuit court found the record was "replete with evidence of the County's unclean hands" and proceeded to list the conduct it believed supported this finding. After providing a lengthy list of actions, the court concluded:

> [W]hen taken in its totality, the evidence of record firmly establishes that the County, by and through certain of its sitting Council members acting with members of the Council-elect, engaged in a pattern of conduct intended to harass

and interfere with Preston's ability to execute his duties as [c]ounty [a]dministrator.

We hold the circuit court erred in finding the County had unclean hands for two reasons. First, the listed actions taken by incoming members of the 2009 Council are irrelevant to the analysis of this issue because those individuals had not been sworn into office yet, and therefore, had no authority to act on behalf of the County. While the court acknowledged these individuals' conduct could not be attributable to the County, it nevertheless included their conduct in the list and used such conduct as a basis for finding the County had unclean hands. To the extent the circuit court relied upon the actions of the incoming Council members, we agree with the County's contention that it "confused the political rhetoric of primary winners with actual County conduct."

 Most of the remaining conduct the circuit court cited concerns actions taken by Waldrep and Cindy Wilson toward Preston during his tenure as county administrator, for which he sued both of them in their *individual capacities*, not their capacities as Council members. We find the conduct of two Council members acting in their individual capacities may not, however, be imputed to the County. Accordingly, we hold the circuit court erred in considering the conduct of "others" in reaching its conclusion. *See Arnold*, 201 S.C. at 532, 23 S.E.2d at 738 (noting "[t]he expression 'clean hands' means a clean record with respect to the transaction with *the defendants themselves* and *not with respect to others*" (emphasis added)); *see also* 30A C.J.S. *Equity* § 118 (2015) ("An innocent party is, of course, not barred from relief because of the misconduct of others for which he or she is not responsible....").

Second, we find the listed conduct had nothing to do with the subject matter of this litigation. In the Final Order, the circuit court primarily focused its analysis upon the actions of two individual Council members, Waldrep and Cindy Wilson, dating back to 2005. In concluding the County had unclean hands, the court specifically found the behavior of Waldrep and Cindy Wilson—along with incoming members of the 2009 Council—"prejudiced Preston in the execution of his duties, prompting his assertion of the anticipatory breach claim and tort claims in the first instance."

As noted above, the County was not responsible for the conduct of its incoming Council members, and thus, their conduct prior to taking office is irrelevant here. We find the court's reliance upon meetings that took place between incoming Council members in 2009 misplaced because the instant matter concerns actions leading up and relating to the November 18, 2008 meeting of the 2008 Council. What occurred after this meeting among individuals not yet sworn into office simply has no bearing upon the resolution of this issue. More importantly, much of the conduct referenced by the circuit court was already litigated in separate matters not before the court.

For these reasons, we hold the circuit court erred in considering conduct that—although indicative of "the atmosphere that surrounded the actors in this case"—was irrelevant to the subject matter of the instant litigation. *See Arnold,* 201 S.C. at 532, 23 S.E.2d at 738; *Anderson,* 365 S.C. at 493, 617 S.E.2d at 756. We find the court ignored the requirements of *Arnold* and *Anderson* in concluding such conduct prejudiced Preston in the execution of his duties as county administrator because, simply put, Preston's ability to execute his duties as county administrator has nothing to do with this case. The instant litigation focuses on whether improper conduct at the November 18, 2008 meeting of the 2008 Council requires this court to invalidate the approval of Preston's Severance Agreement and rescind the agreement itself. Furthermore, Preston had already relinquished his position as county administrator before the 2009 Council decided to bring this action.

Based on the foregoing, we hold the circuit court erred in finding the County could not invoke its equitable powers to rescind the Severance Agreement because the County had unclean hands. Although we agree rescission is unavailable as a remedy in this case, we reverse the circuit court's finding that the County had unclean hands.

## VII. Adequate Remedy at Law

The County contends the circuit court further erred in finding equitable relief was unavailable in this case because an adequate remedy at law existed. We agree.

Generally, equitable relief is available only when no adequate remedy at law exists. *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n,* 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989). "An 'adequate' remedy at law is one which is as certain, practical, complete[,] and efficient to attain the ends of justice and its administration as the remedy in equity." *Id.* Our supreme court has consistently held that "[a] suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Auto-Owners Ins. Co. v. Rhodes,* 405 S.C. 584, 593, 748 S.E.2d 781, 785 (2013) (quoting *Felts v. Richland Cty.,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991)). "Whether an action for declaratory relief is legal or equitable in nature depends on the plaintiff's main purpose in bringing the action." *Williams v. Wilson,* 349 S.C. 336, 340, 563 S.E.2d 320, 322 (2002).

In the Final Order, the circuit court concluded if the County "wished to question the legality of the Severance Agreement," then it could have accomplished this goal by bringing a declaratory judgment action challenging the legality of the 2008 Council's actions "without suing Mr. Preston directly for rescission."

Contrary to the circuit court's findings, the County argues it could not have received the complete relief sought—the return of all monies appropriated to fund the Severance Agreement—without the court invalidating the vote, rescinding the contract, and imposing a constructive trust on Preston's monthly retirement benefits. The County's main purpose in bringing this action was to seek the above equitable relief, not merely to question the legality of the Severance Agreement. Because the anti-alienation provision in section 9-1-1680 of the South Carolina Code (Supp. 2016), only allows a party to reach a retiree's benefits in a constructive trust case, we find no adequate remedy at law existed as to this equitable claim. Regardless of whether rescission was available, the County could not have received complete relief without the court invoking its equitable powers to place Preston's retirement benefits in a constructive trust. Thus, we find a declaratory judgment action would not have afforded the complete relief sought in this action. *See Santee Cooper,* 298 S.C. at 185, 379 S.E.2d at 123 (noting "[a]n adequate remedy at law is one which is as certain, practical, complete[,] and efficient to attain

the ends of justice and its administration as the remedy in equity" (citation omitted)). Further, as noted above, a declaratory judgment action can be equitable in nature—and indeed, would have been given the relief sought in this case.

Accordingly, given that no adequate remedy at law existed, we reverse the circuit court's finding that the County could not invoke its equitable powers because the County could have challenged the Severance Agreement's legality via a declaratory judgment action instead of directly suing Preston.

## VIII. Breach of the Severance Agreement

In light of our previous holding that the Severance Agreement is invalid because it was approved during an absence of a quorum, we find Preston can no longer succeed on his breach of contract counterclaim. Accordingly, we reverse the circuit court's finding that the County breached the covenant not to sue provision in the Severance Agreement by bringing the instant action. We decline to address whether attorney's fees are appropriate because the circuit court found this issue "should be held in abeyance pending the final disposition of this case and the filing of any petition as required by law."

## IX. Remaining Issues

Finally, because our resolution of prior issues is dispositive in this appeal, we decline to rule upon whether the circuit court erred in finding the Severance Agreement was not unreasonable and capricious; a product of fraud and abuse of power; or void as against public policy. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

## CONCLUSION

Like the circuit court, we are mindful of the separation of powers concerns attendant to the judicial branch of government overturning the action of a duly elected county council, and therefore, take this opportunity to clarify that nothing in this opinion shall be construed as passing judgment on the merits or propriety of the 2008 Council's decision. Our decision hinges on the narrow question of whether the 2008 Council

had legal authority to approve the Severance Agreement when four of the seven members, despite having clear conflicts of interest, improperly cast their votes on the matter. We hold the 2008 Council had no such authority because it could not legally act in the absence of a quorum. As a result, the Severance Agreement is null and void.

We affirm the circuit court's finding that Preston owed no fiduciary duty to inform the 2008 Council of improper votes and his conduct did not constitute fraud, constructive fraud, or negligent misrepresentation. The circuit court also properly declined the County's invitation to apply the single tainted vote rule because *Baird* demonstrates South Carolina does not follow such rule. We hold the court erred, however, in refusing to invalidate the 2008 Council's approval of the Severance Agreement based upon the absence of a quorum, and accordingly, we reverse. Although we agree with the circuit court that rescission is not an available remedy because the parties cannot be returned to their status quo ante, we reverse the court's finding of unclean hands. We further reverse the court's finding that the County could not invoke its equitable powers because an adequate remedy at law existed. Lastly, we reverse the court's holding that the County breached the terms of the Severance Agreement by bringing the instant action.

**AFFIRMED IN PART and REVERSED IN PART.**

HUFF, J., concurs. FEW, A.J., not participating.